**Karen RASH, Appellant,**

v.

**Diann WHISENNAND et vir, Appellees.**

**No. 337.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 18, 1970.

Rehearing Denied April 15, 1970.

Alice Giessel, Talbert, Giessel, Barnett & Stone, Houston, for appellant.

Wayne Fisher, Fisher, Roch & Blackstock, Houston, for appellees.

TUNKS, Chief Justice.

This is a personal injury case growing out of a rear-end automobile collision.

The collision occurred on March 4, 1967, a Saturday, at about 3:00 p. m. The point of the collision was somewhere in the 2100 block of Travis Street in the City of Houston. Travis is a multi-lane one-way street for northward traffic. The two cars were in the right-hand traffic lane and there was a parking lane to the right of them. Webster Street crosses Travis Street at the south end of the 2100 block. That intersection does not have a traffic control signal for Travis Street traffic. Gray Street crosses Travis at the north end of the 2100 block. At that intersection there

are traffic control lights controlling traffic on Travis and Gray Streets.

The plaintiffs in the trial court, and appellees here, were Mrs. Diann Whisennand and her husband, Hartwell H. Whisennand. The defendants in the trial court were Karen Rash, appellant here, and her father, J. G. Rash. J. G. Rash was sued on the theory of negligent entrustment. The jury found favorably to him on that theory and such issue is not a matter of contest in this appeal.

Just before the collision Mrs. Whisennand was driving north on Travis Street. Her husband was in the front seat of the car beside her and their small child was in the back seat. When Mrs. Whisennand reached the intersection at Webster a red light at Gray had the Travis Street traffic backed up all the way to the north edge of Webster. Mrs. Whisennand stopped at the south edge of Webster to avoid blocking that intersection. Karen Rash had entered Travis Street a block to the south. She was driving her father's automobile. There were two other young ladies in the car with her. As Miss Rash approached Webster Street she stopped her car immediately behind that of Mrs. Whisennand. When the traffic light at Gray Street turned green the Travis Street traffic started moving. The traffic in the right hand lane moved slowly because cars were making right hand turns onto Gray. After the traffic in her lane started moving, Mrs. Whisennand proceeded on across Webster Street and northward toward Gray. Miss Rash followed her. At some point north of the north edge of Webster Street and before reaching the Gray Street intersection Mrs. Whisennand stopped her car and Miss Rash ran into the back end of it. Evidence presented by the plaintiffs was to the effect that Mrs. Whisennand brought her car to a gradual stop, that her stopping was made necessary by the fact that the cars between her and Gray Street had stopped when the light there again turned red and that she stopped about five feet behind the car in front of her which was also stopped. The testimony was not consistent as to the point at which Mrs. Whisennand stopped, varying all the way from a point about two car lengths north of the north edge of Webster Street to a point near the middle of the 2100 block of Travis.

Karen Rash testified that Mrs. Whisennand stopped her car suddenly, about the middle of the block, when she, Mrs. Whisennand, was one and one-half car lengths behind the car in front of her and when the car in front of her was still moving. Miss Rash admitted, however, that she knew Mrs. Whisennand was going to have to stop her car at some point before Mrs. Whisennand got to the Gray Street intersection. One of the passengers in Miss Rash's car testified that Mrs. Whisennand stopped suddenly about the middle of the block and that there were no cars ahead of her between the point where she stopped and the Gray Street intersection.

Mrs. J. G. Rash, Karen's mother, came to the scene of the accident a few minutes after it occurred. At the time, Mrs. Whisennand had left, apparently to call the police. Mrs. Rash testified that she asked Mr. Whisennand what had occurred. She testified that Mr. Whisennand said that he and his wife were having an argument and that his wife "slammed on her brakes."

In response to special issues the jury found that Karen Rash was guilty of negligence proximately causing the collision in failing to make a proper application of her brakes and in failing to keep a proper lookout. The jury also found that Mrs. Whisennand "stopped her vehicle more abruptly than a person of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances" and that such conduct was a proximate cause of the collision. The jury failed to find that Mrs. Whisennand "stopped her vehicle at a place where a person of ordinary prudence in the exercise of ordinary care would not have stopped under the same or similar circum-

stances." The plaintiffs in the trial court made a motion to disregard the jury's contributory negligence findings on the grounds that there was no evidence to sustain them and on the further ground that under the circumstances Mrs. Whisennand owed no duty not to stop suddenly. The trial court granted the plaintiffs' motion to disregard and rendered judgment in their favor. The order sustaining the plaintiffs' motion to disregard does not state the ground upon which it was sustained. Karen Rash has perfected her appeal.

The appellant's position is that there is evidence that Mrs. Whisennand negligently made a sudden stop which proximately caused the collision so that the trial court erred in disregarding the jury's findings on those issues. The appellees, on the other hand, contend that there is no evidence to support the jury's findings on those issues so that the trial court properly disregarded them. As an incident to this argument between the parties they also present conflicting contentions as to whether, under the facts of this case, the appellee, Mrs. Whisennand, was under any legal duty not to stop suddenly. By cross-points the appellees, alternatively, contend that the evidence is "factually insufficient" to support the findings of the jury on the questions of contributory negligence and proximate cause.

In reviewing the "no evidence" and "factually insufficient evidence" points and cross-points, this Court is governed by and has followed the often stated rules pertaining to such reviews as set out in Garza v. Alviar (Tex.Sup.Ct.), 395 S.W.2d 821.

In support of their contention that there was no evidence that Mrs. Whisennand negligently brought her car to a sudden stop the appellees point out that Miss Rash and her passenger described the stop only in general, conclusionary terms. The only evidence as to speed is to the effect that both cars were going at about 15 m. p. h. before the collision. The Whisennand car did not leave any skid marks or tire marks in stopping.

The language used by Karen Rash in describing the stop made by Mrs. Whisennand is as follows:

Q. "Were you expecting her to stop at that particular spot or closer up to the intersection?"

A. "Not in that spot. I expected her to go on a little bit and her stop to be much more gradual than it was."

Q. "How was her stop? I don't want to choose the words for you, but I want you to describe the manner in which she stopped her vehicle."

A. "Well, it was—I don't know. Her tires didn't squeal, but it was a very abrupt stop. She just stopped right there, and I didn't expect it at all."

The language used by Deborah Turner, one of the passengers in Miss Rash's car, in describing the stop was:

Q. "Did you observe the vehicle that you had the accident with, the one you hit, come to a stop in front of you?"

A. "Yes, sir. An abrupt stop."

Q. "Will you describe to us the manner in which that vehicle stopped at the time of the accident as to whether it was a slow, gradual, or normal stop, or whether it was a sudden abrupt stop?"

A. "It was a sudden abrupt stop."

■ While the descriptions given by Miss Rash and Miss Turner of the manner in which the plaintiff's automobile came to a stop were expressed only in relative terms they were nevertheless admissible and were probative evidence. The fact that the plaintiffs' car, traveling at 15 m. p. h., stopped without leaving visible tire or skid marks, does not necessarily mean that it did not suddenly stop. Grimmet v. Washington, Tex.Civ.App., 386 S.W.2d 214, no writ hist. Absent such physical ev-

idence there was hardly any way in which the stop could be described except by the use of such relative terms. Any estimates given by witnesses as to the time lapse between the application of the brakes and the stop or the distance traveled during such interval would probably have been even less reliable evidence than the descriptions given by the defendants' witnesses. Their testimony constituted a "shorthand rendering of the facts." McCormick & Ray, Texas Law of Evidence, Sec. Ed., Vol. II, Sec. 1397, p. 225. The evidence was sufficient to raise and support the jury's findings of contributory negligence and proximate cause.

■ The plaintiffs contended in the trial court, and do so here, that Mrs. Whisennand stopped under such circumstances as that she owed no duty to the driver of the car following her. The evidence was such that we must presume that the trial court found that the place and manner in which Mrs. Whisennand stopped was made necessary by the traffic stopping in front of her. (No issue inquiring as to this fact was requested or submitted to the jury nor was there any objection to the failure to submit such issue). The question of the existence of a duty under a given set of facts is a question of law, but the question of the existence of the facts giving rise to the duty, may, under conflicting evidence, be a question of fact. Webb v. City of Lubbock, Tex.Civ.App., 380 S.W.2d 135, writ ref., n. r. e.; Prosser, Law of Torts, 3rd Ed., p. 206, see also C & R Transport, Inc. v. Campbell, (Tex.Sup.Ct.), 406 S.W.2d 191. We are thus presented with the question as to whether a presumed finding by the trial court sustains a holding, as a matter of law, that Mrs. Whisennand owed no duty to the following driver not to stop suddenly.

There are a number of cases discussing the question of the duty of the driver of an automobile who is forced to stop by a traffic control device. In Colom v. Vititow, Tex.Civ.App., 435 S.W.2d 187, writ ref., n. r. e., at p. 190, this Court said:

"The lead driver is under no duty to keep a lookout for traffic which approaches from the rear if he stops his car properly for a signal light and before entering the intersection." In that case, however, the judgment of the trial court was reversed and remanded because the trial court had rendered judgment in disregard of jury findings when there was no proper motion to disregard them.

In Brock v. Boss, Tex.Civ.App., 416 S.W.2d 456, writ ref., n. r. e., the jury had found the plaintiff driver of the lead car in a rear-end collision case contributorily negligent in stopping suddenly when a traffic light turned yellow. The trial court had disregarded that jury finding and rendered judgment for the driver of the lead car. The Waco Court of Civil Appeals affirmed, saying that the lead driver violated no duty to the following driver not to stop suddenly. There was a dissent by Judge Wilson.

In Neill v. Baltazar, Tex.Civ.App., 345 S.W.2d 454, writ ref., n. r. e., the jury, in a rear-end collision case, found that the plaintiff driver of the lead car was contributorily negligent in suddenly stopping at a stop sign. The trial court rendered judgment for the defendant. On appeal the plaintiff presented a preponderance of the evidence point of error as to the finding of contributory negligence. The Austin Court of Civil Appeals, stating that the plaintiff in stopping at the stop sign did not violate any legal duty to the following driver, held that the finding of contributory negligence was against the great weight and preponderance of the evidence and reversed and remanded the case for a new trial.

In Bass v. Stockton, Tex.Civ.App., 236 S.W.2d 229, no writ hist., another rear-end collision case, the jury had found the plaintiff lead driver contributorily negligent in failing to keep a proper lookout when stopping at a yellow traffic light. The trial court rendered judgment for the defendant. In this case, too, the appellant

apparently did not raise the legal question of no duty by his points of error. The San Antonio Court of Civil Appeals reversed and remanded holding that the plaintiff had not violated any duty to the defendant by stopping her automobile when the traffic light turned yellow.

There are a number of cases that treat the question as to the negligence of the lead driver in a rear-end collision case from the standpoint of the existence or non-existence of a duty on the part of the lead driver. See C & R Transport v. Campbell, supra; Boddy v. Canteau, Tex.Civ.App., 441 S.W.2d 906, writ ref., n. r. e.; Navarre v. American Bakeries Co., Tex.Civ.App., 434 S.W.2d 218, no writ hist.; Hill v. W. E. Brittain, Inc., Tex.Civ.App., 405 S.W.2d 803, no writ hist.; Berry v. Sunshine Laundries & Dry Cleaning Corp., Tex.Civ.App., 387 S.W.2d 948, writ ref., n. r. e.; Riles v. Reichardt, 366 S.W.2d 655, no writ hist.; Jones v. Downey, Tex.Civ.App., 359 S.W.2d 116, writ ref., n. r. e.; Solana v. Hill, Tex.Civ.App., 348 S.W.2d 481, writ ref., n. r. e.; LeSage v. Smith, Tex.Civ.App., 145 S.W.2d 308, writ dismd., judgm. cor. It is the appellees' position that a driver forced to stop by a traffic control signal has no legal duty not to stop suddenly. They argue that Mrs. Whisennand was forced to stop when the cars ahead of her were forced to stop by the traffic control signal at the Gray Street intersection and that such fact, as a matter of law, relieved her of any duty not to stop suddenly, so that her sudden stop, as a matter of law, could not have been negligence.

Usually, in those cases where the courts in rear-end collision cases have determined the existence or non-existence of a duty on the part of the lead driver, the facts controlling the legal question of duty were established without contradiction in the evidence. (C & R Transport v. Campbell, supra, is an exception). In this case the facts presented by the appellees as controlling on the duty question and relieving Mrs. Whisennand of the duty were not es-

tablished by uncontradicted evidence. Mrs. Whisennand's testimony would sustain a finding of such fact favorable to appellees' contention, but Miss Rash testified that Mrs. Whisennand stopped her car one and one-half car lengths behind the next car in front and when that car was still moving. Mr. Whisennand made a statement that his wife "slammed on her brakes" during the course of an argument with him. The jury could have believed that the place and manner of Mrs. Whisennand's stopping was not made necessary by the stopping of the car in front of her. However, if the existence or non-existence of this disputed fact is controlling on the legal duty question, the defendant had the burden of proving its non-existence. That is to say, the defendants had the burden of proving and procuring a jury finding on, as an element of her defense of contributory negligence in suddenly stopping, facts under which Mrs. Whisennand had a legal duty not to stop suddenly. If such questioned fact negated duty, an issue as to the non-existence of such fact was one of the cluster of issues by which the defense of contributory negligence in suddenly stopping would properly be submitted to the jury. Prosser, the Law of Torts, 3rd Ed., at p. 146. No such issue was requested or submitted and there was no objection to the charge because of such omission. Thus, if the fact that Mrs. Whisennand's sudden stop was made necessary by the stopping of the car in front of her relieved her of a duty not to stop suddenly, we must presume that the trial judge, in rendering judgment for the appellees, found that such stop was so made necessary. Dee v. Parish, 160 Tex. 171, 327 S.W.2d 449; Rule 279, Texas Rules of Civil Procedure.

The real question here is whether Mrs. Whisennand's conduct should be judged on the legal basis of the existence or non-existence of duty or on the factual basis of the exercise or failure to exercise ordinary care. We are of the opinion that the latter basis should be used to test the conduct of Mrs. Whisennand. Even if it

be considered that the cases cited by the appellees establish the rule that a driver of the first car at an intersection forced to stop suddenly at the intersection by a traffic control signal owes no legal duty to following drivers to keep a proper lookout to the rear or not to stop suddenly, that rule should not be extended by relieving the drivers farther back in the line of traffic of such duties.

The duty concept, as applied to automobile collision cases, is at best complex, nebulous, and intangible. In such cases it is usually impossible to identify any relationship between the parties which is significant to the existence of a duty owed by one to the other and the existence or non-existence of duty is based on the character of the conduct involved rather than the relationship between the parties. In Prosser, at p. 331, it is said: "It is better to reserve 'duty' for the problem of the relationship between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation."

To say that drivers back in a line of cars stopping for a traffic control signal owe no duty to those drivers following them would be tantamount to the application of the "sudden emergency" defense without some of its essential elements. Such application ignores the questions as to whether, after the emergency arose (the necessity to stop), the driver exercised ordinary care and as to whether the emergency was caused by the driver's own negligence. See Texas Pattern Jury Charges, p. 61, Sec. 3.07.

■ In metropolitan areas the line of cars stopping for a traffic light may extend for a considerable distance. There are a variety of circumstances and conditions under which they stop. This very case is illustrative of that fact. The first stop by Mrs. Whisennand was at the south edge of Webster Street where she stopped because the traffic light at Gray Street had stopped the line of cars extending back to the north edge of Webster Street. Can it be said that in making that first stop Mrs. Whisennand owed no duty to the drivers following her? Each driver in the stopping line is faced with a different set of circumstances and conditions. If any driver is to be excused from liability for his conduct because of the absence of a legal duty to those following, such excuse should be limited to the first driver in line stopped by the traffic signal. The liability of the other drivers in the line of traffic should be tested on the factual basis of whether they did or did not exercise ordinary care and whether, if they failed to do so, their failure was a proximate cause of the collision.

■ We do not intend to suggest that a driver who is forced to stop his car suddenly in order to avoid colliding with the car in front of him is necessarily guilty of negligence or contributory negligence if struck by a following car. We say, rather, that his fault should be tested by a factual determination of whether, under the circumstances, his conduct was characterized by a want of ordinary care, rather than by a legal determination of the existence or non-existence of a fictitious duty to the driver following him. This does not deprive the trial judge the means of protecting one from an improper verdict. If there is no evidence of negligence the judge may render judgment in disregard of a jury's finding it. If the jury's finding of negligence is so against the preponderance of the evidence as to be clearly wrong, the judge may grant a new trial. If the "no duty" concept is applicable to the first driver stopping at a traffic control signal so as to exonerate him if a following driver collides with his car, that rule should not be extended so as to exonerate other drivers farther back in the line of traffic.

For the reasons stated, the judgment of the trial court is reversed and judgment is here rendered for the appellant.