Jerry **RODRIGUEZ;** JoAnna Rodriguez; MariLou Quintanilla; and Jose Rodriguez and Genoveva Rodriguez, Individually and As Next Friend of Veronica Rodriguez, Appellants,

v.

Stan **MOERBE,** Appellee.

No. 04–96–00384–CV.

Court of Appeals of Texas, San Antonio.

Jan. 30, 1998.

---

Carlos A. Muniz, Carrizo Springs, for Appellant.

Pat Mullen, Daniel B. Ross, Mullen, MacInnes & Redding Ltd., Austin, for Appellee.

Before HARDBERGER, C.J., and STONE and ANTONIO G. CANTU,[1] JJ.

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

## OPINION

ANTONIO G. CANTU, Justice (Assigned).

This is an appeal from an order of the trial court granting a summary judgment in favor of Stan Moerbe (Moerbe), defendant below, in a personal injury case brought by Jerry Rodriguez, JoAnna Rodriguez, MariLou Quintanilla and Jose Rodriguez and Genoveva Rodriguez, individually and as next friend of Veronica Rodriguez (Rodriguezes) for injuries sustained in an automobile accident when their 1983 Ford pickup truck collided with a 1983 GMC Jimmy being driven by Hector Sepulveda (Sepulveda).

In a single point of error, the Rodriguezes assert that the trial court erred in granting the motion for summary judgment because there are genuine issues of material fact regarding their cause of action.

The uncontroverted summary judgment evidence reflects that on April 3, 1994, Easter Sunday, Moerbe and members of his family were on a recreational outing along the Frio River.[2] Moerbe's 1989 Chevrolet Suburban was parked along the Old Uvalde Highway and was broken into and burglarized by persons unknown. When Moerbe discovered that the windows to his vehicle had been broken and some possessions removed, he got into his Suburban and drove down the Old Uvalde Highway,[3] hoping to find the person or persons who had burglarized his vehicle. As he approached the intersection of the Old Uvalde Highway and U.S. Highway 83, approximately seven miles north of LaPryor, Moerbe noticed a GMC Jimmy vehicle approaching the same intersection immediately ahead of him.

Moerbe, desiring to look inside the Jimmy to see if the occupants acted suspiciously, passed the GMC Jimmy before either vehicle reached the intersection and an impending stop sign. Moerbe then pulled back into the

path of the GMC Jimmy and coasted past the stop sign onto the shoulder of U.S. Highway 83. The GMC Jimmy whipped around Moerbe's Suburban, ran the stop sign, entered the southbound lane of U.S. Highway 83, and collided with the Ford pickup occupied by the Rodriguez family, which was also traveling south on U.S. Highway 83, thereby inflicting injuries upon various members of the Rodriguez family.

On June 16, 1995, the Rodriguezes filed suit against Moerbe alone, alleging that Moerbe's action in chasing the GMC Jimmy and in crossing in front of the vehicle forced the GMC Jimmy to move onto the left lane and onto the southbound lane of U.S. Highway 83 causing a collision with their vehicle.

The Rodriguezes' Second Amended Original Petition alleged negligence on the part of Moerbe in the following respects:

1. Failing to maintain proper control of the vehicle he was driving at the time of the incident at issue;

2. Driving in an unskilled and incompetent manner and with disregard for the safety of others;

3. Failing to exercise ordinary care while operating a vehicle so as not to endanger the safety of others;

4. Passing unsafely and in a manner that endangered the safety of others;

5. Failing to stop at a STOP sign at the intersection of Old Uvalde Highway and Highway 83;

6. Failing to yield right of way to oncoming traffic at the intersection of Old Uvalde Highway and Highway 83;

7. Driving at an excessive rate of speed under the circumstances;

8. Using his vehicle to attempt to stop another moving motor vehicle.

On February 9, 1996, Moerbe filed his Motion for Summary Judgment[4] alleging

---

2. The location is known as the Broken Bridge swimming hole.

3. The road is also known as "Old Bridge Road" and "Broken Bridge Road".

4. There are two motions for summary judgment contained in the record. One was filed on February 9, 1996, and the other on February 14,

1996, at 4:00 o'clock p.m. There is no attempt to amend or supplement the earlier motion and it is unclear which motion was addressed by the trial court. The record, however, reflects that the Rodriguezes filed their response at 3:15 o'clock p.m. on February 14, 1996, the same day the later motion for summary judgment was filed. There is little difference, if any, between the two motions except that the later motion is

that he was entitled to judgment as a matter of law because there is no genuine issue of material fact regarding elements of the Rodriguezes' cause of action. Specifically, Moerbe alleged that there was no duty owing to the Rodriguezes under the circumstances of the case, that he could not, as a matter of law, have foreseen the negligent acts of a third party who caused the accident, and that, in any event, the acts of a third party were a new and independent cause of the collision. The summary judgment was not granted on specific grounds.

Moerbe's summary judgment evidence consists of his own affidavit, excerpts from the depositions of two of the plaintiffs, Jerry and Jose Rodriguez, the investigating officer's accident report, deposition exhibits consisting of photographs showing damage to the GMC Jimmy and Ford pickup truck, and a diagram of the incident prepared during the taking of depositions.

The Rodriguezes' summary judgment evidence, in response to Moerbe's Motion for Summary Judgment, consists of the depositions of Jerry and Jose Rodriguez, the deposition of Genoveva Rodriguez, a diagram prepared during the depositions, and the affidavit of Hector Sepulveda.

Essentially, the evidence submitted by the parties is identical with a few, but important, exceptions.

## STANDARD OF REVIEW

The standards for reviewing a summary judgment are well-established:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

unaccompanied by summary judgment evidence. We shall consider the February 9, 1996, motion

*Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–9 (Tex.1985); *see also MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986); *Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex.1988); *Roskey v. Texas Health Facilities Comm.*, 639 S.W.2d 302, 303 (Tex.1982). Moreover, the reviewing court will not consider evidence that favors the movant's position unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

In order for a defendant to be entitled to summary judgment, he must conclusively establish that there is no genuine issue of fact as to at least one essential element of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). That is, he must show, as a matter of law, that the plaintiff has no cause of action against him. *Citizens First Nat'l Bank of Tyler v. Cinco Exploration Co.*, 540 S.W.2d 292, 294 (Tex.1976). In the alternative, the defendant may prove conclusively all elements of an affirmative defense. *Palmer v. Enserch Corp.*, 728 S.W.2d 431, 435 (Tex.App.—Austin 1987, writ ref'd n.r.e.). A matter is conclusively established only if ordinary minds cannot differ about the conclusions to be drawn from the evidence. *Harris v. Varo, Inc.*, 814 S.W.2d 520, 522 (Tex.App.—Dallas 1991, no writ).

Once a movant has established a right to summary judgment, the burden shifts to the non-movant to present the trial court with evidence of any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The reviewing court will then examine the response of the non-movant to see if specific facts at issue are brought to the attention of the trial court. *See University of Texas Health Science Ctr. v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792 (Tex.1987).

If the non-movant has not brought forth a material issue of genuine fact, the appellate court must look to the evidence before the trial court to see that each ground specifical-

as the proper one because the response can only allude to that motion.

ly presented to the trial court is proved as a matter of law. *Clear Creek Basin Auth.,* 589 S.W.2d at 677. In the context of cases in which a determination of negligence is required to reach a decision, disposition by summary judgment is the exception, not the rule. *Hennessy v. Estate of Perez,* 725 S.W.2d 507, 509 (Tex.App.—Houston [1st Dist.] 1987, no writ). When the trial court's order granting summary judgment does not state the particular ground on which summary judgment was granted, the judgment will be affirmed if any of the grounds under which it was sought are established as a matter of law. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989). Accordingly, the burden is on the party appealing from such order to show that each of the independent arguments alleged in the motion is insufficient to support the order. *Rogers v. Ricane Ent., Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

## THE SUMMARY JUDGMENT EVIDENCE

### The Deposition Testimony of Jerry Rodriguez

Jerry Rodriguez, the nineteen-year-old son of Jose and Genoveva Rodriguez, testified that on the second and third day of April 1994, the Rodriguez family was spending the Easter weekend camping at Garner State Park near Uvalde. On Easter Sunday, the family, along with other relatives traveling in a separate vehicle, was returning to their home in Carrizo Springs driving south on U.S. Highway 83. Jose was driving, Jerry was sitting in the passenger side and his mother, Genoveva, was in the middle. Other siblings were in the jump seats behind the front occupants while still other children were riding in the bed of the truck under a camper cover.

As the Rodriguezes' vehicle approached within 200 yards of a point where the Old Uvalde Highway intersects with U.S. Highway 83, Jerry's attention was drawn to a GMC Jimmy in the distance being followed by a Suburban at a high rate of speed down the Old Uvalde Highway. According to Jer-

ry, the vehicles appeared to be racing in excess of 55 miles per hour. Jerry's father, Jose, immediately began to slow down as his vehicle approached the intersection. The GMC Jimmy appeared to be stopping at the stop sign, according to Jerry, when the Suburban whipped around the GMC Jimmy and pulled in front of it, stopped,[5] and parked on the shoulder of U.S. Highway 83.

Jose slammed his brakes to avoid the Suburban and began to skid. The GMC Jimmy then pulled around the Suburban and collided with Rodriguez's truck as it was still skidding.

After the collision, Jerry saw Moerbe approach his father, Jose, and heard Moerbe remark that he was sorry about the accident, that the occupants of the GMC Jimmy had stolen a gun and purse from his vehicle. Meanwhile, Sepulveda, later identified as the driver of the GMC Jimmy, and several other occupants fled from the scene leaving one of their passengers seriously injured. Jerry was taken to a Uvalde hospital where he spent two weeks recovering from a dislocated hip.

### The Deposition Testimony of Jose Rodriguez

Jose Rodriguez, testifying through an interpreter, stated that he was driving his pickup truck along U.S. Highway 83 on his way home to Carrizo Springs after spending the Easter weekend camping at Garner State Park near Uvalde with his family and relatives.

When he was approximately eight or nine miles north of LaPryor, where the Old Uvalde Road intersects with U.S. Highway 83, Jose noticed two vehicles traveling at a high rate of speed with one appearing to be chasing the other. Jose saw a GMC Jimmy in front with a Suburban in pursuit approaching a stop sign. Then he saw the Suburban pass the GMC Jimmy very close to the stop sign, disregard the stop sign, stop past the stop sign, and subsequently, pull over to the shoulder of the highway after the collision.

---

**5.** Although Moerbe's Suburban eventually stopped on the shoulder of the road, it did not stop at the stop sign.

As the Suburban passed the GMC Jimmy, Jose applied his brakes to avoid colliding with the Suburban and skidded to his left. At the same time, the GMC Jimmy pulled out to his left and around the Suburban,[6] ran the stop sign and collided with Jose's pickup.

After the collision, Jose approached Moerbe and began to engage him in a heated conversation but Moerbe went instead directly to the GMC Jimmy, reached in and retrieved a shotgun previously stolen from him and remarked that he was not going to allow the occupants of the GMC Jimmy to leave the scene. Meanwhile, the occupants of the GMC Jimmy, including Sepulveda, took off running and fled the scene. Later, during the investigation of the accident, Moerbe approached Jose and stated, "I'm sorry, I didn't want to get involved in this accident."

### The Deposition Testimony of Genoveva Rodriguez

Genoveva, the wife of Jose and mother of Jerry, testified that she was sitting in the middle of the front seat between Jose and Jerry at the time of the collision. When she first noticed the GMC Jimmy and the Suburban, she thought, "They were just kids playing races on the side road."

Genoveva saw the Suburban pull in front of the GMC Jimmy, run by the stop sign, and stop in front of the GMC Jimmy. She then saw the GMC Jimmy pull around the Suburban without stopping at the stop sign until it collided with the vehicle she was in. She later observed the Suburban move over to the side of the road.

### The Affidavit of Hector Sepulveda

Hector Sepulveda, by affidavit, stated:

"On or about April 3, 1994, I was driving a 1987 GMC Jimmy and had as passengers, George Holden, Michael Mendoza and Joe Mendoza. We were on Old Uvalde Highway going towards Highway 83 next to the Uvalde Crossing Bridge.

We were being chased by a Chevrolet Suburban at a high rate of speed. As we got to the stop sign before entering Highway 83, all of a sudden the Chevrolet Suburban went around us and braked in front of us trying to stop us. I avoided colliding with the Chevrolet Suburban by quickly turning to my left, but instead struck the 1983 Ford Pickup driven by Jose Rodriguez. Due to the high speed we were traveling, I nor the Chevrolet Suburban stopped at the stop sign before entering Highway 83. I would not have gotten into Highway 83 and struck the Ford Pickup, driven by Jose Rodriguez if the driver of the Chevrolet Suburban had not chased us at a high speed and used his Suburban to get in our way trying to stop us."

### The Accident Report of Trooper Manuel Espinoza [7]

Trooper Espinoza arrived at the scene of the collision on U.S. Highway 83, seven miles north of LaPryor in Zavala County, at 5:20 o'clock p.m. While there, he identified the drivers of the vehicles involved in the collision as Hector Sepulveda and Jose Mario Rodriguez, both of Carrizo Springs. Espinoza identified three passengers in the GMC Jimmy driven by Sepulveda and three passengers in the pickup truck driven by Jose Rodriguez.

Espinoza's report reflects that the GMC Jimmy was stopped on the southbound improved shoulder approximately seven miles north of LaPryor on U.S. Highway 83 and that without signaling, the Jimmy suddenly turned left into the southbound main lane and failed to yield the right of way to the pickup truck being driven by Jose Rodriguez in a southerly direction. According to the information received by Espinoza, the pickup swerved to the left but, nevertheless, struck the GMC Jimmy causing major damage and injuries to passengers of both vehicles. Espinoza reports that the GMC Jimmy was

---

6. Jose perceived the GMC Jimmy's maneuver as an attempt to avoid rear-ending the Suburban.

7. Although Trooper Espinoza's report is clearly based on hearsay from unidentified sources, Moerbe's tender of the report as summary judg-ment evidence was unopposed by the Rodriguezes. In any event, the report may constitute proper summary judgment evidence. *See Carter v. Steere Tank Lines, Inc.*, 835 S.W.2d 176, 181 (Tex.App.—Amarillo 1992, writ denied).

eluding apprehension for a burglary of a vehicle by the owner of the burglarized vehicle following an incident which had occurred earlier on Old Uvalde Bridge Highway.

### The Affidavit of Stan Moerbe

Stan Moerbe, by affidavit, stated:

"On April 3, 1994, I was driving my 1989 Chevrolet Suburban traveling south on the Old Uvalde Highway approaching the intersection with Highway 83. I was following a GMC Jimmy driven by Hector Sepulveda. My Suburban had just been burglarized when I left it unattended. I intended to observe the occupants of the GMC Jimmy vehicle to see if they acted suspicious, so I could get their license plate number if I suspected the occupants were the parties that had burglarized my vehicle.

As the GMC Jimmy vehicle approached the stop sign at the intersection, I passed them on the left side and pulled back into the right lane. In my rearview mirror, I saw them accelerate, and I coasted through the stop sign and pulled over on the right shoulder of Highway 83. At no time did my vehicle enter the traffic lane of Highway 83. I saw them whip into the left lane of the Old Uvalde Highway and onto Highway 83. They ran the stop sign and ran directly into the plaintiff's vehicle. There was nothing I could have done to prevent the collision, as it happened behind me.

There is no way I could have known, nor was there any reason, that they would run a stop sign and pull into the highway at a high rate of speed, causing the collision. At no time did my vehicle come in contact with either the Sepulveda vehicle or the plaintiff's vehicle. I was not chasing the vehicle, nor was I attempting to stop the vehicle at any time. I was simply trying to determine if the occupants of the GMC Jimmy had burglarized my automobile, and if I suspected that they had, I was going to take their license plate number to give to the authorities."

In a negligence cause of action, the plaintiff must prove that the defendant owed a duty to plaintiff, that the defendant breach-ed that duty, that the breach was the actual and proximate cause of the plaintiff's injuries and that damages resulted. *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex. 1983); *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627, 631 (Tex.1976); *Barnes v. Wendy's Intern., Inc.,* 857 S.W.2d 728, 729 (Tex.App.—Houston [14th Dist.] 1993, no writ). Duty is the obligation to conform to a particular standard of conduct toward another. *Castillo v. Sears, Roebuck & Co.,* 663 S.W.2d 60, 64 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). The threshold inquiry in a negligence action is determining whether the defendant owed a duty to the plaintiff. *Graff v. Beard,* 858 S.W.2d 918, 919 (Tex.1993); *Hartsfield v. McRee Ford, Inc.,* 893 S.W.2d 148, 150 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

### THE NO DUTY CONTENTION

The question of the existence of a duty, under a given set of facts, is a question of law. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *see Abalos,* 544 S.W.2d at 631 (determining whether duty existed as matter of law), but the question of the existence of the facts giving rise to the duty, may, under conflicting evidence, be a question of fact. *Rash v. Whisennand,* 453 S.W.2d 353, 357 (Tex.Civ. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.).

In determining whether a defendant owes a duty to a plaintiff, the court will consider several interrelated factors, including the risk involved, foreseeability of the risk, and likelihood of injury. These factors are then weighed against the social utility of the actor's conduct and the magnitude of the burden on the defendant. *Phillips,* 801 S.W.2d at 525. It is generally agreed that the most important factor to consider in determining whether a duty exists is foreseeability. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987).

Moerbe argued in his motion for summary judgment, and now urges on appeal, that the summary judgment evidence conclusively establishes that he had no duty to prevent an unanticipated injury caused by a

third party with whom he had no relationship. This argument is premised upon Moerbe's contention that the affidavit and the deposition testimony tendered by the Rodriguezes contain nonprobative opinions and conclusory testimony regarding a chase of Sepulveda's vehicle by Moerbe.[8]

■ Moerbe suggests that we are not to consider this as evidence of a relationship between him and Sepulveda and, therefore, of evidence regarding a duty. Moerbe urges that the only summary judgment evidence comes from his own affidavit denying a chase of Sepulveda's vehicle and an attempt to stop him. Moerbe's position is clearly without merit. Moerbe did not timely file objections to the Rodriguezes' response. In fact, objections were never filed. It is now beyond doubt that inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay. *Einhorn v. LaChance*, 823 S.W.2d 405, 410 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.) (failure to object to affidavit in response to motion for summary judgment waives any complaint concerning inadmissible evidence as part of the summary judgment record). Moreover, any harm in considering the affidavit is minimized inasmuch as Moerbe's own summary judgment evidence included the very testimony he now seeks to exclude. Included in his evidence, without limitation or condition, were the depositions of Jose and Jerry Rodriguez, which contained the very statements he now takes issue with. Moreover, also included in his summary judgment evidence was the accident report prepared by Officer Espinoza, which alludes to Sepulveda's attempt to elude apprehension by Moerbe following the burglary of his vehicle.

■ The general rule is that there is no duty to protect another from the conduct of a third person. *Phillips*, 801 S.W.2d at 525. There are, however, two exceptions to this general rule. The first exception is where

there exists a special relationship between the defendant and the injured party or between the defendant and the third person. *Otis Engineering Corp.*, 668 S.W.2d at 309. The second exception is when criminal conduct is the foreseeable result of a tortfeasor's negligence. *Mr. Property Management Co.*, 690 S.W.2d at 550.

■ But we need not place controlling reliance upon whether or not a relationship existed between Moerbe and Sepulveda. An exception to the rule that a party will not be held liable for the tortious acts of another party, absent special relationship between the first party and the active tortfeasor, arises when the third party's conduct is the foreseeable result of the defendant's negligence. *Mr. Property Management Co.*, 690 S.W.2d at 549. Where the facts of the particular case are disputable and are of such character that different minds might reasonably draw different conclusions therefrom, a question of fact is presented properly determinable by a jury. *Texas Power & Light Co. v. Stone*, 84 S.W.2d 738, 740 (Tex.Civ.App.—Eastland 1935, writ ref'd).

The issue before us is the same issue addressed by the court of appeals in *Whisennand*, 453 S.W.2d at 358–59, that is, whether Moerbe's conduct should be judged on the legal basis of the existence or non-existence of duty or on the factual basis of the exercise or failure to exercise ordinary care.

■ We agree with the reasoning of our sister court when it stated:

The duty concept, as applied to automobile collision cases, is at best complex, nebulous, and intangible. In such cases it is usually impossible to identify any relationship between the parties which is significant to the existence of a duty owed by one to the other and the existence or nonexistence of duty is based on the character

8. The record contains, by way of supplemental transcript, *Objections to Plaintiffs' Response to Defendants' Motion for Summary Judgment.* The document is without a filemark and contains the notation "Moot" written over its face. The District Clerk has certified that the document was never submitted for filing but was mailed directly to the trial court who declared it moot due to receiving it after he had ruled on the motion for summary judgment. It is further certified that the "Objections" were not received by the District Clerk until almost a month after the motion was ruled on.

of the conduct involved rather than the relationship between the parties. 453 S.W.2d at 359.

The existence of a duty is sometimes said to arise when a party negligently creates a dangerous situation. It then becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others, in the exercise of their lawful rights, may be injured thereby. *See Abalos,* 544 S.W.2d at 632–33. Therefore, we do not find it necessary to address Moerbe's further argument that a relationship did not exist because he did not know Sepulveda or know that it was Sepulveda who had burglarized his vehicle. Nor do we find it momentous that his vehicle did not come into contact with the Rodriguez vehicle or the Sepulveda vehicle. *See and compare Dixie Motor Coach Corp. v. Galvan,* 126 Tex. 109, 86 S.W.2d 633 (Tex.Comm.App. 1935) (opinion adopted); *Southwestern Greyhound Lines, Inc. v. Wafer,* 208 S.W.2d 614 (Tex.Civ.App.—Eastland 1948, writ ref'd); *English v. Murphy,* 145 S.W.2d 201 (Tex.Civ. App.—Beaumont 1940, no writ); *Texas Power & Light Co.,* 84 S.W.2d at 739. We do not believe that a finding of a relationship between Moerbe and Sepulveda necessarily compels the existence or nonexistence of a duty as a matter of law. We will review the contention under a test of foreseeability.

## THE NO–PROXIMATE–CAUSE CONTENTION

The two elements of proximate cause are *cause in fact* and *foreseeability.* Cause in fact means that the act or omission was a substantial factor in bringing about the injury and without it, the harm would not have occurred. *Mr. Property Management Co., Inc.,* 690 S.W.2d at 549.

Cause in fact is not shown if the defendant's negligence did no more than furnish a condition that made the injury possible. *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 776 (Tex.1995). "The evidence must go further and show that such negligence was the proximate, and not the remote cause of resulting injuries ... [and] justify the conclusion that such injury was the natural and probable result thereof." *Doe v.*

*Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). Even if the injury would not have happened but for the defendant's conduct, the connection between the defendant and the plaintiff's injuries simply may be too attenuated to constitute legal cause. *Allbritton,* 898 S.W.2d at 775. Whether a particular act of negligence is a cause in fact of an injury has been said to be a particularly apt question for jury determination, *Farley v. M.M. Cattle Co.,* 529 S.W.2d 751, 756 (Tex.1975); *Hall v. Martin,* 851 S.W.2d 905, 913 (Tex.App.—Beaumont 1993, writ denied), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1399, 128 L.Ed.2d 72 (1994).

Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others, *Missouri Pacific R.R. Co. v. American Statesman,* 552 S.W.2d 99, 103 (Tex.1977), and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen. *Texas Cities Gas Co. v. Dickens,* 140 Tex. 433, 168 S.W.2d 208, 212 (Tex. 1943).

Foreseeability does not require that the actor anticipate the particular accident or the precise manner in which injury will occur once he has created a dangerous situation through his negligence. *Gulf C. & S.F. Ry. Co. v. Ballew,* 66 S.W.2d 659, 661 (Tex.Comm.App.1933) (opinion approved); *American Statesman,* 552 S.W.2d at 103; *Berly v. D. & L. Security Servs. and Investigations, Inc.,* 876 S.W.2d 179, 182–3 (Tex. App.—Dallas 1994, writ denied). If, however, foreseeability involves the resolution of disputed facts or inferences, legal resolution would be inappropriate. *Mitchell v. Missouri–Kansas–Texas R.R. Co.,* 786 S.W.2d 659, 662 (Tex.1990), *cert. den., Missouri Pac. R.R. Co. v. Mitchell,* 498 U.S. 896, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990).

Proximate cause is generally a question of fact for jury determination, *Strakos v. Gehring,* 360 S.W.2d 787, 792 (Tex.1962), *Houston Transit Co. v. Steele,* 324 S.W.2d 912, 914 (Tex.Civ.App.—Waco 1959, writ

ref'd n.r.e.), *Springall v. Fredericksburg Hosp. and Clinic,* 225 S.W.2d 232, 234 (Tex. Civ.App.—San Antonio 1949, no writ), but may, under limited circumstances, be a question of law where the evidence is without material dispute and where only one reasonable inference may be drawn therefrom. *Fitzsimmons v. Brake Check, Inc.,* 832 S.W.2d 446, 449 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Holt v. Ray,* 435 S.W.2d 568, 571 (Tex.Civ.App.—Eastland 1968, no writ).

▬▬▬ Proximate cause does not necessarily mean the last cause, or the act immediately preceding an injury, *Stone,* 84 S.W.2d at 740, nor need it be the one nearest the injury. *Wafer,* 208 S.W.2d at 616–17. The general rule that the question of proximate cause is for the jury has been applied where the injury was the result of concurring causes. Causes are concurrent when they act contemporaneously to produce a given result. *Id.* The mere fact that another person concurs or cooperates in producing the injury or contributes thereto, in any degree, whether large or small, is of no importance. *See Gulf C. & S.F. Ry. Co. v. McWhirter,* 77 Tex. 356, 14 S.W. 26, 27 (1890).

▬▬▬ Thus, it is no defense, in actions for injuries resulting from negligence, that the negligence of third persons contributed to cause the injury to the plaintiff, if the negligence of the defendant was an efficient cause, without which the injury would not have occurred. In other words, where the defendant is guilty of negligence that causes an injury, and the plaintiff is free from negligence contributing thereto, the fact that the negligence of a third person also contributed does not relieve the defendant from liability for his negligence. *Stone,* 84 S.W.2d at 740; *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992). It is sufficient if his negligence is an efficient cause without which the injury would not have resulted, *Chancey v. Van

*Luit,* 306 S.W.2d 377, 380 (Tex.Civ.App.—Amarillo 1957, writ ref'd n.r.e.), and the plaintiff may recover from either or both. *Murphy,* 145 S.W.2d at 203.

Moerbe once again argues that the undisputed summary judgment evidence shows that he did not know, nor could have known, that the occupants of the GMC Jimmy were the people who had burglarized his vehicle. He, therefore, concludes that the summary judgment evidence necessarily conclusively established that the "unexpected and illegal movements" of Sepulveda were unforeseeable as a matter of law. Alternatively, Moerbe says that even if he was negligent, Sepulveda's failure to yield the right-of-way was a superseding cause relieving him of any negligence.

▬▬▬ As we have heretofore pointed out, Moerbe's own summary judgment evidence substantiates the conclusion that he was in pursuit of the GMC Jimmy and that Sepulveda was attempting to elude apprehension even before Moerbe learned the identity of the GMC Jimmy's driver and his possible involvement in the burglary. The question of prior identity is of no consequence. Whether the "unexpected and illegal movements" of Sepulveda's vehicle were unforeseeable as a matter of law is doubtful. Moreover, there need be no concert of action between the tortfeasors; it is sufficient if the cumulative effect of their acts is a single, indivisible injury, which would not have happened but for the concurrence of their acts. *See Murphy,* 145 S.W.2d at 203.

The pertinent portions of Sepulveda's affidavit [9] clearly present a controverted issue regarding Moerbe's participation as an efficient cause without which the collision would not have resulted. The summary judgment evidence presents nothing more than conflicting versions of the events leading up to the

---

9. "We were being chased by a Chevrolet Suburban at a high rate of speed. As we got to the stop sign before entering Highway 83, all of a sudden the Chevrolet Suburban went around us and braked in front of us trying to stop us. I avoided colliding with the Chevrolet Suburban by quickly turning to my left, but instead struck the 1983 Ford Pickup driven by Jose Rodriguez.

Due to the high speed we were traveling, I nor the Chevrolet Suburban stopped at the stop sign before entering Highway 83. I would not have gotten into Highway 83 and struck the Ford Pickup, driven by Jose Rodriguez if the driver of the Chevrolet Suburban had not chased us at a high speed and used his Suburban to get in our way trying to stop us."

collision.[10] We cannot say that from the evidence presented by both parties, different minds might not reasonably draw different conclusions.

From the summary judgment evidence, a fact finder could reasonably conclude that Sepulveda's collision with the Rodriguezes' vehicle was brought about by the actions of Moerbe in suddenly pulling his vehicle into the path of Sepulveda's vehicle in the proximity of a major intersection, or that Moerbe's actions concurred with the negligence of Sepulveda in bringing about the event.

 Whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately and directly brought about by intervening causes, if such intervening causes were set in motion by the original wrongdoer. *Fort Worth & D.C. Ry. Co. v. Williams*, 275 S.W. 415, 419 (Tex.Civ.App.— Fort Worth 1925, writ ref'd), *cert. denied*, 270 U.S. 661, 46 S.Ct. 356, 70 L.Ed. 786 (1926). Thus, a tortfeasor is liable for the natural, ordinary and probable consequences that result from his negligent act and, even though the damage is immediately inflicted by another, the negligence of the original tortfeasor may be a proximate cause of the damage so as to impose liability on him therefor. *Holt*, 435 S.W.2d at 571.

### THE NEW–AND–INDEPENDENT–CAUSE CONTENTION

 A "new and independent cause"[11] is defined as an act or omission of a separate and independent agency that destroys the causal connection between the negligent act or omission of the defendant and the injury complained of, and thereby becomes the immediate cause of such injury. *Young v. Massey*, 128 Tex. 638, 101 S.W.2d 809, 810 (1937).

 Some of the criteria that is useful in determining whether an act is a concurring or a new and independent cause are:

a. the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

b. the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operations;

c. the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

d. the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

e. the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

f. the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*See Humble Oil & Refining Co. v. Whitten*, 427 S.W.2d 313, 315 (Tex.1968).

 Usually, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability. However, the tortfeasor's negligence will not be excused where the criminal conduct is a foreseeable result of such negligence. *Travis*, 830 S.W.2d at 98; *Castillo v. Sears, Roebuck & Co.*, 663 S.W.2d at 64, 66; *see also Mr. Property Management Co.*, 690 S.W.2d at 550.

 If the injury is caused wholly by an unforeseen act or omission, independent of and having no causal relation to the wrongful act or omission made the foundation of an action, then the result must be attributed to the independent cause and the original wrongdoer is relived of liability. *Williams*, 275 S.W. at 419. Even a non-negligent act may be an independent intervening act that breaks the causal connection

---

10. Indeed, the accident report of Trooper Espinoza presents yet a third version of the events leading up to the collision.

11. New and independent cause and superseding cause are sometimes used interchangeably. *Fort Worth & D.C. Ry. Co. v. Westrup*, 285 S.W. 1053, 1054 (Tex.Comm.App.1926) (judgment adopted).

between the original negligence and the injury. *See Garner v. Prescott,* 234 S.W.2d 704, 707 (Tex.Civ.App.—Eastland 1950, no writ).

 But the intervention of an unforeseen cause of injury does not necessarily mean there is a new and independent cause of such character as to constitute a superseding cause that will relieve a defendant from liability. If the chain of causation is continuous or unbroken, even an unforeseeable intervening cause may be a concurring cause of the injury. *Harvey v. Stanley,* 803 S.W.2d 721, 725 (Tex.App.—Fort Worth 1990, writ denied); *Holt,* 435 S.W.2d at 571. An intervening cause that is set in motion by the original wrongdoer can never supersede the original act. *Westrup,* 285 S.W. at 1054. The issue of intervening cause as a bar[12] to a defendant's liability is dependent on whether the forces generated by the defendant's negligence have "come to rest." *Bell v. Campbell,* 434 S.W.2d 117, 120–2 (Tex.1968).

 Our supreme court has long held that the intervention of an unforeseen and unexpected cause is not sufficient to relieve a wrongdoer from the consequences of his negligence if "such negligence directly and proximately cooperates with the independent cause in the resulting injury." *McAfee v. Travis Gas Corp.,* 137 Tex. 314, 153 S.W.2d 442, 447–8 (1941); *see also Texas Power & Light Co. v. Holder,* 385 S.W.2d 873, 887 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e., 393 S.W.2d 821); *City of Fort Worth v. Patterson,* 196 S.W. 251, 253 (Tex.Civ.App.—Fort Worth 1917, no writ); *Goldstein Hat Mfg. Co. v. Cowen,* 136 S.W.2d 867, 873 (Tex. Civ.App.—Dallas 1939, dis'm judgm. corr.).

 Once again, Moerbe invites us to disregard all summary judgment evidence, including his own evidence, referring to his chase of the Sepulveda vehicle. He suggests that we should consider only his own affidavit which denies the chase, and the attempt to stop Sepulveda's vehicle. Moreover, he points out that all of his alleged acts of negligence occurred prior to entering U.S. Highway 83. Thus, he concludes that Sepulveda's acts of running the stop sign[13] and failing to yield the right-of-way, created a new and intervening cause. *See and compare Campbell,* 434 S.W.2d at 122.

We view Moerbe's position as advocating a departure from the mandatory standard of review involving summary judgments requiring the reviewing court to accept evidence favorable to the nonmovant as true and in indulging every reasonable inference in favor of the nonmovant while resolving all doubts in his favor. *See MMP, Ltd.,* 710 S.W.2d at 60. We adhere to the mandated standard of review.

New and independent cause is generally a question for the finder of fact.[14] *Poole,* 732 S.W.2d at 311; *Ballew,* 66 S.W.2d at 660; *Prescott,* 234 S.W.2d at 707.

Viewing the summary judgment evidence, as we must, we believe that a rational trier of fact could determine that there was no new and independent cause intervening in the collision which was not set in motion by the original wrongful acts of Moerbe. The trier of fact might well conclude that the injuries to the Rodriguezes resulted in the ordinary and natural course of events immediately from the negligent acts of Moerbe that forced Sepulveda to take evasive action to prevent a rear end collision with Moerbe's vehicle.

After reviewing the record, we find that ordinary minds can differ as to the conclusions to be drawn from all of the summary judgment evidence with regard to the facts surrounding duty, proximate cause and especially new and independent cause.

---

**12.** The issue of new and independent cause is a component of the ultimate issue of proximate cause and not an affirmative defense. *Dallas R. & T. Co. v. Bailey,* 151 Tex. 359, 250 S.W.2d 379 (1952).

**13.** Controverting summary judgment evidence indicates that Sepulveda's vehicle was slowing down as it approached the stop sign at the highway intersection and that Sepulveda ran the stop sign while attempting to avoid colliding with Moerbe's vehicle.

**14.** New and independent cause has been incorrectly characterized as a defense. *See Hennessy v. Estate of Perez,* 725 S.W.2d 507, 509 (Tex. App.—Houston [1st Dist.] 1987, no writ). It is but an element to be considered by the jury in determining the existence of proximate cause. *Bailey,* 250 S.W.2d at 383.

We hold that Moerbe's summary judgment evidence fails to demonstrate that at least one of the elements of the Rodriguezes's cause of action has been conclusively established against the Rodriguezes.

The judgment of the trial court is reversed and the cause remanded for trial.