**BEL–TON ELECTRIC SERVICE, INC. a/k/a Bel–Ton Electric, Inc., Petitioner,**

v.

**Suzie Y. PICKLE and National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Respondents.**

No. 94–0657.

Supreme Court of Texas.

Jan. 18, 1996.

Rehearing Overruled March 7, 1996.

Gary W. Maxfield, Kevin J. Cook, Dallas, for Petitioner.

Charles T. Frazier, Jr., David Bell, Dallas, for Respondents.

PER CURIAM.

The issue in this case is whether the trial court should have submitted a sole proximate cause instruction to the jury. Because we hold that it should have, we reverse the judgment of the court of appeals, 877 S.W.2d 789, and remand this case to the trial court for a new trial.

Joe Pickle, an electrician employed by LTV Aerospace and Defense Co. (LTV), was crushed to death by a motorized door on a hangar at LTV. His wife, Suzie Y. Pickle, brought this wrongful death action contending that Bel–Ton Electric Service, Inc. a/k/a Bel–Ton Electric, Inc. (Bel–Ton) was negligent because it did not remove a set of electrical switches that controlled the hangar doors. The hangar doors are motorized and roll on tracks. Two sets of switches consisting of two switches each were on both the east and the west wall of the hangar. These switches were installed over forty years ago.

When LTV decided to renovate the hangar, it hired Bel–Ton to move at least one set of switches to a security booth so that LTV could control access to the switches. At trial,

Bel–Ton insisted that it was hired to move only the switches on the west wall, but Pickle asserted that Bel–Ton was supposed to move both sets of switches. The parties vigorously contested this issue at trial. In any event, it is clear that Bel–Ton did not move the switches on the east wall of the hangar.

To open the hangar door, an operator had to manually hold one of the switches in the "open" position. As long as the switch was held open manually, the door would remain open. When the operator released the switch, the door would immediately stop moving and remain in the place where it had stopped. The hangar door could be closed in the same manner.

According to the evidence, a feud about using the hangar doors developed between LTV's engineering and computer programming departments. Because of this feud, an LTV employee intentionally jammed a switch on the east wall in the "closed" position. After this, if the hangar door was opened, it would begin to close immediately after the operator manually released the switch inside the security booth. The door would not simply stop moving as it would have before being jammed. Although no one witnessed Pickle's accident, he was found crushed between the hangar door and the wall of the security booth after the door apparently automatically closed on him in this manner.

A jury found Bel–Ton 100 percent negligent and found that Bel–Ton's negligence was the proximate cause of Pickle's death. Bel–Ton argues that the trial court erred by failing to include in its charge Bel–Ton's proposed instruction on sole proximate cause. Bel–Ton argues that it was entitled to such an instruction because there was evidence that an LTV employee's intentional conduct was the sole proximate cause of Pickle's death.

In *Dresser Industries, Inc. v. Lee,* we held that a defendant "is entitled to have the jury instructed regarding sole cause if that issue is raised by the evidence." 880 S.W.2d 750, 755 (Tex.1993). Although *Dresser* was a products liability case, it is instructive here. In *Dresser,* Dresser Industries sold silica products to the plaintiff's employer. The plaintiff claimed that Dresser failed to adequately warn of the dangers of inhaling the silica dust that was emitted by its products. There was evidence that Dresser did not provide an adequate warning. There was also evidence that the plaintiff's employer did not properly ventilate the workplace or require its employees to wear respiratory masks. On that record, we concluded that Dresser was entitled to an instruction on sole proximate cause.

Here, Bel–Ton presented evidence that it was hired only to move the switches—whether it was only one set of switches or both. Although these switches were at least forty years old, they were in working condition. Furthermore, it was sometime after Bel–Ton completed its work that LTV's employee intentionally jammed a switch on the east wall. LTV's employee took this action because of the ongoing feud with other LTV employees over the use of the hangar doors. By presenting this evidence at trial, Bel–Ton raised the issue of sole proximate cause. If the jury believed Bel–Ton's evidence, it could have concluded that the LTV employee's negligence was the sole cause of Pickle's death. Because this issue was critical to Bel–Ton's defense, the trial court's refusal to submit a sole cause instruction was reversible error. The court of appeals incorrectly concluded that there is no evidence in the record that raises the issue of sole proximate cause.

We note that Bel–Ton further argues that there was no evidence that its conduct was a proximate cause of Pickle's death and that the evidence established, as a matter of law, that its conduct was not a proximate cause of Pickle's death. Our review of the evidence demonstrates that there was some evidence that Bel–Ton's conduct caused Pickle's death.

Pursuant to Rule 170 of the Texas Rules of Appellate Procedure, a majority of this Court grants Bel–Ton's application for writ of error and, without oral argument, reverses the judgment of the court of appeals and remands this case to the trial court for a new trial. Because we remand this case to the trial court for a new trial, we do not reach

the other issues presented in Bel–Ton's application for writ of error.