In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-507 CV


____________________



CROWN DERRICK ERECTORS, INC., Appellant



V.



SANDY DEW, INDIVIDUALLY AND AS REPRESENTATIVE OF THE 


ESTATE OF PAUL DEW, DECEASED, AND CARL DEW AND DORIS DEW,


Appellees






On Appeal from the 58th District Court


Jefferson County, Texas


Trial Cause No. A-160397






OPINION



 Paul Dew fell to his death through a floor opening on Gorilla V, an offshore drilling
rig under construction at Sabine Pass, Texas. Dew was working on the rig for
LeTourneau, Inc., the rig builder. Dew's family sued the rig owner (Rowan Companies,
Inc.), the rig designer (Woolslayer Companies, Inc.), and the derrick erector (Crown
Derrick Erectors). A jury found the accident was caused by the negligence of Rowan,
Woolslayer, Crown Derrick, and Paul Dew. Crown Derrick is the only party to appeal. 

 In this appeal we consider Crown Derrick's arguments that no legal duty was owed,
no breach of duty occurred, proximate cause was not proven, and the trial court erred in
refusing to submit a jury instruction on new and independent cause. We reverse and
remand for a new trial.

The Accident


 Crown Derrick assembled and installed the derrick on the rig platform. The derrick
had a walkway with ladder openings. Safety gates were to be placed on each side of a
ladder opening to prevent a person from walking into the ladder opening and falling to the
platform below. 

 In March 1998 Crown Derrick began the assembly of the derrick. At some later
date, the time being in dispute, Rowan's project manager, Robert Rimlinger, pointed out
to Crown Derrick's foreman, Greg Cochran, that there were two ladder openings on the
walkway. Cochran originally thought there was only one. Cochran had installed one
ladder with its accompanying safety gates. The other opening remained without safety
gates, and there was a hole large enough for a person to fall through. Rimlinger testified
Cochran acknowledged his error; Cochran said he did not know, forgot, or misread the
derrick drawings. Additional parts were ordered in August 1998. Crown Derrick left the
work site, but planned to return to complete the ladder and safety gate installation --
although there is some dispute over whether the parts were already at the site when Crown
Derrick left. 

 Crown Derrick returned to the rig on September 22, 1998, assembled the ladder
system, and moved it to the deck of the rig. But the crane that would lift the ladder onto
the derrick broke down, and Rowan told Cochran he would be notified when to return to
the work site to complete the work. The next day, September 23, 1998, Paul Dew fell
through the hole on the walkway. 

 Various witnesses testified about the hazard, and the testimony is in conflict. Crown
Derrick's foreman, Cochran, said his crew roped off the hole when Crown Derrick left the
site in August 1998, and he informed Rowan's project manager, Rimlinger, they had done
so. Cochran indicated his practice is to make sure a rope barrier complies with OSHA
standards. He testified he suggested to Rimlinger that, for safety reasons, no one should
work "up there" until Crown Derrick was finished with the job. Robert Davis, a Crown
Derrick employee, said that when he left the derrick, both sides of the hole were
"barricaded" by rope. Crown Derrick presented testimony that two ropes barred each
side, one at waist level and one at chest level. 

 The rope barrier was removed, apparently, while Crown Derrick was away from
the worksite. Evidence was presented that at some point an electrical junction box was
placed over the hole -- although this was disputed because the box was too small to cover
the hole. Then, on September 13, 1998, Kevin Stacey, a Rowan employee, may have
moved the box, exposed the hole, and secured the opening with a rope. Later still, the
rope may have been taken down but put back up again. 

 Whether a rope was in place at the time of Dew's death is disputed. Five Rowan
employees testified they saw a rope in place before the accident. Bryan Quinn, Rowan's
rig manager on Gorilla V, testified he even ducked under the rope and stepped across the
hole. Rowan employees, Edmond Savoie and Mark Keeling, saw the rope on the morning
of September 23, 1998, the day Dew died. 

 In contrast, other witnesses indicated there was no barrier. LeTourneau's Mark
Frazier looked up at the catwalk shortly after Paul Dew fell and saw no barricade or floor
covering for the hole. Paul's father, Carl Dew, who also worked for LeTourneau at the
Gorilla V work site, testified he did not see any ropes, gates, or ladders on September 22,
the day before Paul's death. James Wasson, a LeTourneau employee, testified there was
an open hole without any rope when he was at the work site approximately three or four
days before the accident. On September 23, Wasson saw Willie Aultman, a Rowan
employee, tying a rope across the hole immediately after the accident. 



Duty 


 The Dews asserted in their petition that Crown Derrick knew about an unreasonably
dangerous condition on the premises and failed to correct the condition or warn Paul Dew. 
The pleading also asserted a negligence action generally -- that Crown Derrick was
negligent in failing to use ordinary care in the exercise of its right of control and right of
supervision over the details of the work performed at its work site. Specifically, the Dews
alleged negligence in failing to warn, failing to establish devices to keep Paul Dew from
entering the area of the hole, failing to take reasonable precautions for his safety, and
failing to correct the condition. Although the pleadings asserted both a premises defect
claim and a negligence claim generally, the case against Crown Derrick was submitted to
the jury, without objection, through a broad-form general negligence question. See
generally Clayton W. Williams, Jr., Inc. v. Olivo, 952 S.W.2d 523, 529 (Tex. 1997)
(premises defect and negligent activity as independent theories of recovery). 

 We first consider whether Crown Derrick owed a duty of care. Whether a legal
duty exists is a question of law for the court to decide from the facts surrounding the
alleged occurrence. See Thapar v. Zezulka, 994 S.W.2d 635, 637 (Tex. 1999). Crown
Derrick argues it owed no duty of care as a matter of law to Paul Dew, because (a) it was
not in control or possession of the site where the accident occurred and (b) it did not create
the hazard that caused the accident. An independent contractor put in control of the
premises is under a duty to use reasonable care to make and keep the premises under its
control in safe condition for invitees. City of Denton v. Page, 701 S.W.2d 831, 834 (Tex.
1986) (liability is based on control over premises). But even one not in control of the
property at the time of the injury may owe a duty to make the premises safe under certain
circumstances. Lefmark Management Co. v. Old, 946 S.W.2d 52, 54 (Tex. 1997); see
generally Guereque v. Thompson, 953 S.W.2d 458, 467-70 (Tex. App.--El Paso 1997, pet.
denied) (discussion of types of circumstances). Specifically, one who creates a dangerous
condition owes a duty of due care. Lefmark, 946 S.W.2d at 54. One who agrees to make
safe a known dangerous condition owes the same duty. Id. 

 The contract between Crown Derrick and Rowan required Crown Derrick to inspect
the material and equipment furnished by Rowan, notify Rowan of any defects, refrain from
using that material and equipment without Rowan's prior approval, and provide safe
working conditions. The contract provided that Crown Derrick would establish safety
rules for its employees and comply with the safety rules of Rowan and governmental
agencies. The contract also gave Crown Derrick the right to control all the details of its
work. That control would include the details associated with installing the ladder and
safety gates. Crown Derrick's contractual agreement required it to comply with safety
rules, which included safety rules specifically applicable to holes, and to make and keep
its work area safe. We conclude the agreement imposed on Crown Derrick a duty of due
care to make and keep the opening safe until it could complete its work of installing the
safety gates. 

 After Crown Derrick left its work site, Rowan controlled the work area. In Strakos
v. Gehring, the Texas Supreme Court held that under some circumstances one who creates
a danger may be liable even after control is assumed by another. Strakos v. Gehring, 360
S.W.2d 787, 790 (Tex. 1962). "The fact that one who assumes control over a dangerous
condition left by a contractor may be liable for injuries resulting therefrom does not
necessarily mean that he who creates the danger should escape liability." Id. Liability for
creating the danger in the first place is grounded in the public policy of negligence law,
that a person is responsible for an injury which is the foreseeable consequence of the
person's own negligent act or omission. Id. at 794. More recently, the Texas Supreme
Court has referenced Strakos v. Gehring in stating that one who creates a dangerous
condition may be liable for breach of a duty of due care even though not in control of the
premises at the time of injury. See Lefmark, 946 S.W.2d at 54; City of Denton v. Page,
701 S.W.2d at 835. 

 There is some evidence in the record that even with Crown Derrick's ropes in place,
the hole, as one witness stated, was "absolutely an unsafe condition. Extremely unsafe."
But in deciding the threshold question of whether Crown Derrick owed a legal duty of due
care to make the opening safe, we do not consider whether Crown Derrick breached the
duty or whether the breach was a proximate cause of the accident. By all accounts, the
unguarded hole without safety gates, located around a corner on a walkway, was
dangerous. The danger arose from the incompleteness of Crown Derrick's work when it
left the site. Unless an adequate guard was maintained, the opening would remain a hazard
until the safety gates could be installed by Crown Derrick. Cognizant of that fact, Crown
Derrick put up ropes to guard the opening in the walkway. Crown Derrick was acting to
correct a danger it agreed to correct and that arose out of its own work. Having
undertaken to erect a barrier to protect a dangerous area on its work site, Crown Derrick
owed a duty to exercise ordinary care in doing so.

 We conclude under the circumstances presented in this case Crown Derrick owed
a duty to exercise ordinary care, to make safe the opening -- an opening resulting from the
incomplete status of its work under its contract -- until it could complete the installation
of the safety gates. (1) We next consider whether there is any evidence Crown Derrick
breached that duty to exercise care.

 Breach of The Duty 


 In a legal sufficiency point, Crown Derrick asserts it did not breach its duty of 
care: Crown Derrick says the rope barricade satisfied any duty it owed Paul Dew. The
Dews argue Crown Derrick breached its duty of care because the ropes allowed, and
concurred with, subsequent actions of other defendants that caused the accident. In
reviewing the legal sufficiency of the evidence, an appellate court views the evidence in
a light that tends to support the jury's finding and disregards all evidence and inferences
to the contrary. Rocor Int'l, Inc. v. National Union Fire Ins. Co., 77 S.W.3d 253, 262
(Tex. 2002). If there is more than a scintilla of evidence to support the questioned finding,
the legal sufficiency challenge fails. Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex.
1996). 

 The record contains evidence, disputed by Crown Derrick, that Crown Derrick's
rope barricade violated government regulations and Rowan's safety rules. The jury heard
evidence that, by using rope, Crown Derrick failed to adequately barricade the hole, as it
was required to under Rowan's work rules and by governing regulations. The Dews say
the rope was inadequate for a number of reasons: a rope is a non-standard piece of
equipment, and could have a lot of sway in it or lack tautness; the rope becomes more of
a hazard than a help because it will droop when it gets wet; the knot could slip and has no
strength; and a rope is capable of being moved by anyone, and is not a static barrier. The
jury heard evidence that rope does not comply with OSHA standards, nor with any national
consensus standards for protecting an opening. Evidence was presented that no standard
allows a rope to be used as a barrier, unless it is used with a person who stands guard over
the hole at all times. The Dews presented evidence ropes are risky because they can be
taken down, and workers may need to get through them or beyond them. 

 The jury heard testimony that several alternatives could have been used instead of
a rope. Rowan's rules say that a hole must be guarded by a person or protected by a
standard railing or cover. The jury heard evidence that a metal railing could have been
bolted or welded in a fixed position, or a gate could have been installed. A fixed cover
could have been used -- one that was not moveable, would not slip from the hole, and
would be designed to sustain a person's weight. The jury heard testimony that the most
effective alternative would be a static barrier, either a railing fixed in place or a gate, or
a cover marked with a warning. Some evidence indicated any railing, to comply with
OSHA, would need a top rail, a middle rail, and a toeboard. An S-shaped turnstile could
also have been used, with bars in place that would have to be turned to go past the hole. 
The Dews argue the most obvious safe alternative was a grating cover. 

 The Dews' experts acknowledged that OSHA regulations contemplate a rope barrier
under some circumstances, but they did not believe a rope was adequate here. Under
applicable government standards, they say, a barrier must remain taut, and not deflect
more than three inches, and be able to withstand 200 pounds of force exerted against it. 
The Dews' experts believed the rope could not do that, and someone encountering a rope
that was not taut could fall in the hole. 

 The jury heard evidence that Crown Derrick did not check to see if the barrier
remained in place when it returned to the work site the day before the accident. From the
evidence the jury could find that a reasonable person exercising ordinary care would have
checked to see if the barrier remained in place. 

 If more than a scintilla of evidence supports the jury's finding, the evidence is
legally sufficient. See Rocor Int'l, Inc., 77 S.w.3d at 262. In addressing Crown Derrick's 

legal sufficiency challenge, we must view the evidence in a light that tends to support the
jury's finding and disregard all evidence and inferences to the contrary. Id. In that light,
the evidence is legally sufficient to support the jury finding of breach of the duty of care. 
Proximate Cause


 In another legal sufficiency point, Crown Derrick says its conduct did not
proximately cause Paul Dew's death. Proximate cause has two elements: cause-in-fact and
foreseeability. Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 784 (Tex. 2001). 
The cause-in-fact element determines whether the act or omission was a substantial factor
in causing the injury, "without which the harm would not have occurred." Id. (quoting
Doe v. Boys Clubs of Greater Dallas, Inc. 907 S.W.2d 472, 477 (Tex. 1995)). 
Foreseeability means that a person of ordinary intelligence would have anticipated the
danger the party's negligence created. Excel Corp. v. Apodaca, 81 S.W.3d 817, 820 (Tex.
2002). Crown Derrick argues its ropes did not cause Dew's fall, because someone
removed its ropes after Crown Derrick left the work site. 

 James Knorpp, the Dews' expert witness, testified that a rope is inadequate as a
barricade under the circumstances of this work site, in part because ropes can be easily
removed by someone working in the area. Knorpp also testified that had Crown Derrick
placed a cover over the hole, the possible and several subsequent acts -- i.e., the removal
of the ropes, the temporary placement of a box over the opening, the removal of the box,
the replacement of the rope, and the possible final removal of the rope -- would not have
occurred. The jury heard evidence a proper cover, a fixed gate, or a fixed railing would
have prevented the accident. And the jury heard evidence Crown Derrick was at its work
site on September 22, the date scheduled for the installation of the safety gates, and did not
check on the barrier it had installed some three weeks earlier. We conclude, on this record
of legally sufficient evidence, the cause-in-fact element was one for determination by a jury
properly instructed on the issue of proximate cause. 

 Turning to the foreseeability element of proximate cause, instead of accepting the
proof that a double rope barrier mutated unforeseeably into a single rope barrier, the jury
may have concluded that the barrier in place at the time of the accident was what one could
expect the original barrier to have become, given the amount of time the rope had been in
place and unchecked by Crown Derrick. Or from the evidence a jury could find it was not
reasonably foreseeable that someone would replace double ropes with single ropes, or
remove the ropes altogether and leave the hole totally unprotected; simply because it was
foreseeable a rope barrier may be removed temporarily or altered, with due care, does not
necessarily mean it is foreseeable someone would leave the hole entirely unguarded. 
Crown Derrick asserts that foreseeability cannot be founded on "hindsight," or on a
"theorizing of an extraordinary sequence of events" by which Crown Derrick's conduct
caused the accident. 

 Evidence was presented from which the jury could have concluded that a single rope
was in place at the time of the accident, but was inadequate to prevent the accident, and
that this degrading of the barrier was foreseeable given the amount of time Crown Derrick
left the ropes unchecked. Other testimony was presented that no rope was in place at the
time of the accident, or the day before the accident when Crown Derrick was at the work
site. The rope may have been in place the day before the accident, but may have been
taken down and the hole left unguarded on the day of the accident. The jury had the
ability to observe and determine the credibility of witnesses who were present at the work
scene, and the jury had the responsibility for resolving the conflicts in the evidence. The
jury may, or may not, have believed Crown Derrick's witnesses who described the
barricade it left, and may or may not have believed some or all of any testimony of any
witness. The jury was brought much closer to the event and the work site than the written
record brings this Court. We conclude, on this record of conflicting evidence, the issue
of proximate cause was a fact issue for a jury properly instructed on the law. 

 The legal sufficiency arguments in issue one are overruled. We next consider
whether the jury, in determining the proximate cause issue, was properly instructed on the
law. 

Jury Charge Instruction


 The jury did not have, in its evaluation of the proximate cause issue, an instruction
on "new and independent cause." Crown Derrick argues the trial court's failure to submit
this instruction is reversible error. When a trial court refuses a requested jury instruction,
the question for the reviewing court is whether the instruction was reasonably necessary
to enable the jury to render a proper verdict. See Tex. R. Civ. P. 277; Texas Workers'
Compensation Ins. Fund v. Mandlbauer, 34 S.W.3d 909, 912 (Tex. 2000). An instruction
must (1) assist the jury, (2) accurately state the law, and (3) have support in the pleadings
and the evidence. See id.; see also Tex. R. Civ. P. 278. 

 The Dews argue Crown Derrick did not preserve its jury charge complaint. If a
party has made the trial court aware of the complaint, timely and plainly, and has obtained
a ruling, error is preserved. State Dep't of Highways & Pub. Transp. v. Payne, 838
S.W.2d 235, 241 (Tex. 1992). Crown Derrick objected to the omission of an instruction
on new and independent cause and submitted a proposed instruction; the trial judge wrote
"refused" on Crown Derrick's proposed instruction. The issue was preserved for review. 

 A new and independent cause is an act or omission by a separate and independent
agency that is not reasonably foreseeable and that destroys the causal connection between
a defendant's negligence and the accident; the new and independent cause becomes the
immediate cause of the accident. Cook v. Caterpillar, Inc., 849 S.W.2d 434, 440 (Tex.
App.--Amarillo 1993, writ denied). If the jury determines the defendant reasonably could
have foreseen the intervening event, the event is not considered a new and independent
cause that breaks the chain of causation. See Phan Son Van v. Pena, 990 S.W.2d 751, 754
(Tex. 1999). 

 New and independent cause is one element to be considered by a factfinder in
determining proximate cause. Dallas Ry. & Terminal Co. v. Bailey, 151 Tex. 359, 250
S.W.2d 379, 383 (1952). Whether a new and independent cause exists is properly
submitted to the jury through an explanatory instruction accompanying the proximate cause
instruction. See Rodriguez v. Moerbe, 963 S.W.2d 808, 821 (Tex. App.--San Antonio
1998, pet. denied); J. Wigglesworth Co. v. Peeples, 985 S.W.2d 659, 665 (Tex. App.--Fort Worth 1999, pet. denied); see also James v. Kloos, 75 S.W.3d 153, 162 (Tex. App.--Fort Worth 2002, no pet.). When there is some evidence presented at trial of a new and
independent cause, a trial judge must submit the explanatory instruction to the jury. Id. 
A refusal to submit an instruction on new and independent cause, when raised by the
evidence, is reversible error. See J. Wigglesworth Co., 985 S.W.2d at 665; Cook v.
Caterpillar, Inc., 849 S.W.2d at 440; see also Bel-Ton Elec. Serv., Inc. v. Pickle, 915
S.W.2d 480, 481 (Tex. 1996) (Trial court's refusal to submit a sole cause instruction,
raised by the evidence, was reversible error.). 

 The Dews contend that the trial court properly refused the new and independent
cause instruction because, they say, the theory does not apply if the superseding force is
an act or omission by a party to the lawsuit. To hold otherwise, they argue, would "make
a mockery" of the Texas comparative responsibility statute. They argue courts have held
that an intervening, superseding force may not be the acts of the defendant or the plaintiff. 
The Dews say that the persons who may have made changes to the rope barrier, or took
it down entirely, were all parties to the lawsuit at trial, and their negligence was submitted
to the jury.

 In Phan Son Van, 990 S.W.2d at 752, the Texas Supreme Court considered whether
the criminal acts of rape and murder by underage, beer-drinking gang members were a
superseding cause in the victims' survivors' negligence action against a store that sold
alcohol to the gang. The Court cited section 442 of the Restatement (Second) of Torts as
instructive in determining when an intervening force rises to the level of a superseding
cause. Id. at 754. One of the factors listed in the Restatement is whether the "intervening
force is due to an act of a third person which is wrongful toward the other and as such
subjects the third person to liability to him[.]" Id. (quoting Restatement (Second) of
Torts § 442 (1965)). In Phan Son Van, the gang's criminal conduct was a superseding
cause. The Supreme Court affirmed a summary judgment in favor of the store. 

 A new and independent cause is a superseding cause. Section 440 of the
Restatement (Second) of Torts defines superseding cause as follows:

 A superseding cause is an act of a third person or other force which by its
intervention prevents the actor from being liable for harm to another which
his antecedent negligence is a substantial factor in bringing about.


Restatement (Second) of Torts § 440 (1965). A new and independent cause must be
the act of a third person or other force, and not of the actor or the one harmed; that is, it
cannot be an act of the defendant requesting the instruction, nor can it be the act of the
harmed plaintiff. See Duran v. Furr's Supermarkets, Inc., 921 S.W.2d 778, 790 (Tex.
App.--El Paso 1996, writ denied). Case law makes clear, as well as the very definition
of superseding cause, that the act must be a new and independent cause, a third person or
other force separate from either the actor or the harmed party. See, e.g., Eoff v. Hal &
Charlie Peterson Found., 811 S.W.2d 187, 192-93 (Tex. App.--San Antonio 1991, no
writ). 

 A new and independent cause may be the conduct of a third person who may be
joined as a party to the lawsuit. See, e.g., Bell v. Campbell, 434 S.W.2d 117 (Tex. 1968). 
In Bell, the Supreme Court held that the conduct of a settling party that had been sued by
the plaintiff was an independent intervening cause as a matter of law under the
circumstances of that case. The fact that the third person had been joined in the lawsuit
was not considered by the Court. But if a third person whose conduct is a superseding
cause is liable for the harm, the third person conceivably may be joined as a party to the
lawsuit. For example, the gang members in Phan Son Van could have been joined as
defendants in the lawsuit against the store. Their criminal conduct nevertheless would
remain a superseding cause despite their status as parties to the lawsuit. Their joinder
would not have precluded submission of an explanatory instruction on causation, nor
would their joinder have precluded a summary judgment in favor of the store on the
causation issue. 

 We see no inconsistency between the Texas comparative responsibility statute and
the requested new and independent cause instruction. The jury may find the third person's
conduct intervened so as to be a new and independent cause severing the chain of causation
between one defendant's negligent act and the harm. If so, that defendant's conduct would
not be compared with the responsible parties' conduct, because that defendant's conduct
would not be a proximate cause of harm. 

 The causation issue is at the center of this case. Evidence was presented from
which a jury reasonably could have found a new and independent cause occurred. Some
of the intervening acts were possibly those of parties to the lawsuit; some acts were by
unknown persons, possibly subcontractors not joined as parties. On the conflicting
evidence in this record, whether any intervening act occurred, and was an unforeseeable
new and independent cause, is for determination by a jury properly instructed on the law. 
A proper instruction was requested on this critical, disputed issue, and would have assisted
the jury. When charge error relates to a contested, critical issue, the error is generally
considered harmful. See Bel-Ton Elec. Serv., Inc., 915 S.W.2d at 481 ("Because this
issue was critical to Bel-Ton's defense, the trial court's refusal to submit a sole cause
instruction was reversible error."); Southwestern Bell Tel. Co. v. John Carlo Texas, Inc.,
843 S.W.2d 470, 472 (Tex. 1992)("To ask the jury to resolve this dispute without a proper
legal definition to the essential legal issue was reversible error.") We conclude the error
here requires reversal. See Tex. R. App. P. 44.1(a).

 We hold the trial court erred in refusing to submit the requested explanatory
instruction to the jury. Because an explanatory instruction on new and independent cause
was necessary to assist the jury in rendering a proper verdict, issue two is sustained. The
remaining issues challenging the judgment need not be addressed; the judgment is
reversed. The case is remanded to the trial court for a new trial consistent with this
opinion. 

 REVERSED AND REMANDED.

 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on March 20, 2003

Delivered September 25, 2003


Before McKeithen, C.J., Burgess and Gaultney, J.J.

DISSENTING OPINION


 Crown Derrick contends the trial court erred in refusing to submit an instruction on
new and independent cause. The majority agrees and remands for a new trial. I disagree.

 Crown Derrick claims "other parties and entities made significant changes to the
open hole that effectively intervened as causative factors, independent of any actions or
inactions on the part of Crown Derrick." Crown Derrick relies upon the following
evidence:


 the rope barrier erected by Crown Derrick was removed by another party; 
 an electrical junction box was placed over the hole;
 another party removed the box;
 another party then placed a singe-stranded rope around the hole; and
 that rope may, or may not, have been down at the time Dew fell through the hole.


Crown Derrick's argument is premised on the assumption that the rope barrier it erected
was sufficient. It is the removal of that barrier that Crown Derrick puts forth as a
superseding and intervening cause. However, the Dew's pleadings alleged Crown Derrick
was negligent in: 

 a. Failing to warn Decedent of the dangerous existence of the hole;

 b. Failing to establish a barricade or preventative devices to prevent
Decedent from entering the area of the hole in question;

 c. Failing to take reasonable precautions for Decedent's safety; and 

 d. Failing to correct the hole when it was discovered.


Crown Derrick ignores the very real possibility the jury found the rope barrier it erected
did not constitute an adequate warning of the hole, that it was not a "barricade" and would
not prevent entrance into the area, that it was not a reasonable precaution, or that it did not
"correct" the hole. Accordingly, any analysis of whether an intervening cause arose must
include the initial failure to install the safety gate.

 Six factors (2) are instructive in determining when an intervening force rises to the
level of a superseding cause:

 (a) the fact that the intervening force brings about harm different in
kind from that which would otherwise have resulted from the actor's
negligence;


 (b) the fact that the intervening force's operation or the consequences
thereof appear after the event to be extraordinary rather than normal in view
of the circumstances existing at the time of the force's operation;


 (c) the fact that the intervening force is operating independently of any
situation created by the actor's negligence, or, on the other hand, is or is not
a normal result of such a situation;


 (d) the fact that the operation of the intervening force is due to a third
person's act or to his failure to act;


 (e) the fact that the intervening force is due to an act of a third person
which is wrongful toward the other and as such subjects the third person to
liability to him;


 (f) the degree of culpability of a wrongful act of a third person which
sets the intervening force in motion.


Phan Son Van v. Pena, 990 S.W.2d 751, 754 (Tex. 1999). See also Humble Oil & Ref.
Co. v. Whitten, 427 S.W.2d 313, 315 (Tex.1968) (citing Restatement (Second) of
Torts § 442 (1965)); James v. Kloos, 75 S.W.3d 153, 161-62 (Tex. App.--Fort Worth
2002, no pet.); and Rodriguez v. Moerbe, 963 S.W.2d 808, 820 (Tex. App.--San Antonio
1998, pet. denied). In Phan Son Van, the Texas Supreme Court considered these factors,
concluding "to be a superseding cause, the intervening force must not be ordinarily or
reasonably foreseeable." Phan Son Van, 990 S.W.2d at 754 (citing Travis v. City of
Mesquite, 830 S.W.2d 94, 98 (Tex.1992); and Knoll v. Neblett, 966 S.W.2d 622, 633-34
(Tex. App.--Houston [14th Dist.] 1998, pet. denied)).

 In this instance, the removal of the rope barrier did not bring about a harm different
in kind from that which would otherwise would have resulted, i.e. someone falling through
the hole. Neither the removal of the rope barrier nor the consequences (someone falling
through the hole) are extraordinary in view of the circumstances, i.e., the hole being in the
middle of a walkway. And the removal of the rope barrier did not operate independently
of the situation created by Crown Derrick's failure to install the safety gate. Thus the first
three factors argue against finding a superseding cause. 

 In Rodriguez v. Moerbe, 963 S.W.2d at 820, the court rejected the defendant's
claim that a third party's act created a new and intervening cause. The court reflected:

 Usually, the criminal conduct of a third party is a superseding cause
relieving the negligent actor from liability. However, the tortfeasor's
negligence will not be excused where the criminal conduct is a foreseeable
result of such negligence. 

 If the injury is caused wholly by an unforeseen act or omission,
independent of and having no causal relation to the wrongful act or omission
made the foundation of an action, then the result must be attributed to the
independent cause and the original wrongdoer is relived of liability. Even
a non-negligent act may be an independent intervening act that breaks the
causal connection between the original negligence and the injury.

 But the intervention of an unforeseen cause of injury does not
necessarily mean there is a new and independent cause of such character as
to constitute a superseding cause that will relieve a defendant from liability. 
If the chain of causation is continuous or unbroken, even an unforeseeable
intervening cause may be a concurring cause of the injury. An intervening
cause that is set in motion by the original wrongdoer can never supersede the
original act. The issue of intervening cause as a bar to a defendant's liability
is dependent on whether the forces generated by the defendant's negligence
have "come to rest."

 Our supreme court has long held that the intervention of an
unforeseen and unexpected cause is not sufficient to relieve a wrongdoer
from the consequences of his negligence if "such negligence directly and
proximately cooperates with the independent cause in the resulting injury."


Id. at 820-21 (citations omitted) (footnotes omitted).

 In the present case, the injury was not caused wholly by an unforeseen act having
no causal relation to the initial wrongful act because the removal of the rope barrier was
not unforeseeable and would have been immaterial but for the failure to install the safety
gate. Further, even if the removal of the rope barrier was unforeseeable, the chain of
causation is continuous thus the intervening act is only a concurring cause of the injury. 
The intervening act was set in motion by the original wrongdoer, Crown Derrick, when
it failed to place the safety gates around the opening and therefore can never supersede the
original act. The intervening act is not a bar to Crown Derrick's liability because the
forces generated by Crown Derrick's negligence in failing to install the safety gates around
the hole never "came to rest."

 In Eoff v. Hal and Charlie Peterson Foundation, 811 S.W.2d 187, 192-93 (Tex.
App.--San Antonio 1991, no writ), the court determined the evidence did not warrant
giving a new and independent cause instruction. Id. at 193. The court noted the Eoffs'
cause of action was based upon the conduct of the staff of the emergency room on May 3,
1985, and "[i]f the hospital negligently caused the damage by failing to treat Mrs. Eoff,
it would be responsible for the damages flowing from that failure to act." Id. Likewise,
in the present case, plaintiffs' claims are based upon Crown Derrick's failure to install the
safety gates and Crown Derrick is responsible for the damages flowing from that act.

 In James v. Kloos, 75 S.W.3d at 161, 162-64, the court found the trial court erred
in submitting an instruction on new and independent cause, stating:

 In determining proximate cause, Texas courts distinguish between a
new and independent cause and a concurrent act. A concurrent act
cooperates with the original act in bringing about the injury and does not cut
off the liability of the original actor. A new and independent cause,
sometimes referred to as a superseding cause, however, is an act or omission
of a separate and independent agency that destroys the causal connection
between the negligent act or omission of the defendant and the injury
complained of, and thereby becomes the immediate cause of such injury. An
intervening cause that is reasonably foreseeable by the defendant, though, is
not a new and independent cause that breaks the chain of causation.


Id. at 161 (footnotes omitted). In James, the plaintiff claimed the instruction was improper
because the defendant presented no evidence of an intervening force and because no
intervening act brought about a harm that was different or extraordinary from what would
normally result from the defendant's negligence. The court determined the instruction
should not have been given because 

 [w]hile the evidence [defendant] relies on may contradict [plaintiff's] position
that [defendant] was negligent, it does not establish an act or omission of a
separate and independent agency that destroyed the causal connection
between [defendant's] allegedly negligent act and [plaintiff's] injury. 
Essentially, [defendant] failed to present any evidence that [plaintiff's] injury
was not a reasonably foreseeable result or natural consequence of the
incident in question.


Id. at 163.

 Here, the acts relied upon by Crown Derrick are not intervening, but concurrent. 
The removal of the rope barrier cooperated with the original act (the failure to install the
safety gates) in bringing about the injury, and does not cut off Crown Derrick's liability. 
Further, the intervening force was reasonably foreseeable by Crown Derrick and therefore
is not a new and independent cause that broke the chain of causation. Crown Derrick did
not present any evidence that the injury was not a reasonably foreseeable result or natural
consequence of Crown Derrick's failure to install the safety gates. 

 In the case of J. Wigglesworth Co. v. Peeples, 985 S.W.2d 659, 664-65 (Tex. App.--Fort Worth 1999, pet. denied), appellants claimed the trial court erred in denying their
request for an instruction on new and independent cause. That case involved a trucking
accident. Id. at 661-62. A driver for J. Wigglesworth Company, Kirby, missed his exit
causing him to reach a bridge in a construction zone that was too narrow for his truck. Id.
at 662. Kirby stopped, blocking his lane and backing traffic up for approximately 300
yards. At the end of the backup, Roger Dick stopped his eighteen wheeler. Michael
Peeples was driving a truck behind Dick and came to a stop behind it. Sheryl Harmon
could not stop her eighteen wheeler in time and struck Peeples truck, driving it into the
back of Dick's truck. Id. Peeples sued appellants, J. Wigglesworth Company, Harmon
and Harmon's employer. A jury found appellants twenty percent negligent, and Harmon
and her employer eighty percent negligent. In finding the trial court did not err in refusing
to instruct the jury on new and independent cause, the court recognized:

 A new and independent cause is some act or omission of a separate
and independent agency that destroys the causal connection between the
defendant's original negligent act and the occurrence in question. However,
if an intervening cause was reasonably foreseeable by the defendant in the
exercise of ordinary care, it cannot be considered a new and independent
cause that will break the chain of causation. The issue of an "intervening
cause" as a bar to a defendant's liability is also dependent on whether the
defendant's negligence and the forces generated by that negligence have
come to a rest.


Id. at 665 (citations omitted). The court found

 at the time of Peeples's injuries, Kirby's negligence and the effects thereof
were still in motion. Furthermore, this is precisely the type of intervening
act (i.e., a wreck involving a third party) that Kirby, in the exercise of
ordinary care, could reasonably foresee would result from missing his exit,
blocking traffic, and backing up his eighteen wheeler in a construction zone. 
Because it was reasonably foreseeable, as a matter of law Harmon's act
could not be a new and independent cause.


Id. 

 Here, there is no point in time at which Crown Derrick's negligence in failing to
install the safety gates came to rest. Furthermore, the removal of the rope barrier is
precisely the type of intervening act Crown Derrick could reasonably foresee would result
from its failure to install the safety gates. Because it was reasonably foreseeable, the act
could not be a new and independent cause as a matter of law. 

 In light of the evidence and the above authority, I cannot say the trial court's
decision to deny Crown Derrick's request for an instruction on new and independent cause
was arbitrary or unreasonable or that the trial court acted without reference to any guiding
rules or principles. See J. Wigglesworth Co., 985 S.W.2d at 664. I would hold the trial
court did not abuse its discretion in refusing to submit the proposed instruction, overrule
Crown Derrick's second point of error and affirm the trial court's judgment.





 DON BURGESS

 Justice


Dissent Delivered

September 25, 2003
1. In a footnote, Crown Derrick asserts Paul Dew was a licensee, not an invitee, and
that the duty owed was less. In another footnote, Crown Derrick asserts that the Dews
waived their premises liability claims, and therefore the jury verdict cannot be sustained
on evidence Crown Derrick failed to inspect the hole barricade and failed to prevent
tampering with the barrier. We disagree with the conclusions Crown Derrick reaches. 
Crown Derrick's duty to exercise care did not arise from its control or possession of the
premises at the time of the accident, nor from Dew's status. Rather, simply stated, Crown
Derrick undertook to correct a dangerous condition created by its own work, and owed a
duty to exercise care in doing so. 
2. The majority opinion only addresses the fifth factor, (e).