IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 03-1128
════════════
 
Sandy Dew, Individually and 
as Representative of the Estate of Paul Dew, Deceased, and Carl Dew and Doris 
Dew, Petitioners,
 
v.
 
Crown Derrick Erectors, Inc., 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Ninth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued January 4, 
2005
 
 
Justice Johnson, joined by Justice Hecht and Justice Green, dissenting.
 
 
The issue 
before us is whether some evidence and permissible inferences from the evidence 
support Crown Derrick’s contention that it was entitled to have a “new and 
independent cause” instruction in the jury charge. The court of appeals 
concluded that there was such evidence, reversed the judgment against Crown 
Derrick, and remanded for a new trial. 117 S.W.3d 526, 537. I agree with the 
court of appeals and would affirm its judgment.
I. Factual Background
The Gorilla V 
drilling rig where Paul Dew fell to his death on September 23, 1998, was owned 
by the Rowan Companies, Inc. Rowan had contracted with (1) Woolslayer Companies, 
Inc., to design and manufacture the rig; (2) LeTourneau, Inc., to build the rig; 
and (3) Crown Derrick to assemble the rig’s derrick. The derrick was first to be 
assembled in three components which were later to be mounted onto the rig.
Because the 
Gorilla V was to be used in the North Sea, it was required to have two ladders 
and associated ladder openings to access the different levels of the rig, 
including the derrick and the derrick’s fourble platform. Woolslayer designed 
the required ladder openings with safety gates around them.
Crown Derrick 
began the first phase of assembling the derrick into its three components in 
March 1998. During that part of the assembly process, safety gates and hardware 
for the crown platform were located, but hardware required to hang a second 
safety gate on the fourble platform was not. Crown Derrick completed the first 
phase of the derrick assembly work and left the jobsite.
In August 
1998, Crown Derrick returned to the jobsite to mount the derrick’s three 
component pieces onto the rig and complete the assembly and installation. As 
assembly of the derrick and installation on the rig progressed, hardware 
required to install a safety gate was still available for only one of the two 
fourble platform ladder openings. Crown Derrick installed a gate on one of the 
ladder openings. Having not received mounting hardware for the other ladder 
opening by the time it was ready to leave the jobsite on August 28, Crown 
Derrick placed a double‑rope barrier on both sides of the ladder opening to 
prevent workers from falling through it. There was evidence at trial that the 
double‑rope barrier complied with Occupational Safety and Health Administration 
(OSHA) requirements. Rowan’s worksite safety rules required walkaround access 
openings such as the ladder opening to have “hatches/handrails with gates or 
some means to prevent personnel falling through openings.” (emphasis 
added). Crown Derrick presented testimony at trial that the double‑rope barrier 
complied with Rowan’s safety rules.
On September 
22, 1998, Crown Derrick returned to the rig construction site to finish hanging 
the ladders on the derrick. Because of a broken crane, Crown Derrick was unable 
to get to the fourble platform and left the rig without checking or doing any 
work on the platform or hanging the ladders.
On September 
23, Paul Dew fell through the un‑gated ladder opening. He died as a result of 
the fall.
Testimony was 
conflicting as to whether a rope barrier protecting the ladder opening was in 
place when Dew fell. An eyewitness testified that shortly after Dew fell, a 
worker was seen erecting a rope barrier across one side of the opening. There 
was evidence that when Crown Derrick left the construction site in August, 
Rowan’s onsite construction manager was told that rope barriers had been placed 
over the hole for safety, and that Rowan’s manager agreed to keep workers off 
the unfinished platform. There was evidence that sometime between the time Crown 
Derrick left the worksite in August and Dew’s fall on September 23, the 
double‑rope barrier was removed and a two‑foot‑wide, four‑foot‑long, and five‑ 
to six‑foot‑tall electrical junction box was placed over the opening. There was 
also evidence that the junction box was too heavy to be moved manually, so it 
was subsequently removed by use of an air hoist, and a single‑rope barrier was 
placed around the opening. There was evidence that one week before Dew fell, 
Rowan’s construction manager was on the fourble platform, saw the ladder opening 
with a single‑rope barrier around it, but took no action to change the 
barrier.
II. New and Independent Cause
A. Nature of the Instruction
The purality 
opinion refers to “new and independent cause” as an inferential rebuttal defense 
which operates to rebut an element of the plaintiff’s case by proof of other 
facts. ___ S.W.3d ___ (citing Dillard v. Tex. Elec. Coop., 157 S.W.3d 
429, 430 (Tex. 2005) and Comm. on 
Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury ChargesCGeneral Negligence & Intentional Personal 
Torts PJC 3.1‑3.5 (2003)). The basic characteristic of an inferential 
rebuttal is that it presents a contrary or inconsistent theory from the claim 
relied upon for recovery. See Select Ins. Co. v. Boucher, 561 S.W.2d 474, 
477 (Tex. 1978). Although “new and independent cause” has been referred to on 
occasion as an inferential rebuttal theory or defense, see Comm. on Pattern Jury Charges, State Bar of 
Tex., Texas Pattern Jury Charges–General Negligence & Intentional Personal 
Torts PJC 3.1, cmt. (2003), the instruction has historically been viewed 
as part of the definition of “proximate cause.” See Dallas Ry. & Terminal 
Co. v. Bailey, 250 S.W.2d 379, 383–84 (Tex. 1952) (“The theory of new and 
independent cause is not an affirmative defense; it is but an element to be 
considered by the jury in determining the existence or non‑existence of 
proximate cause.”).
B. Standard of Review
We review a 
trial court’s decision to submit or refuse a particular instruction under an 
abuse of discretion standard of review. In re V.L.K., 24 S.W.3d 338, 341 
(Tex. 2000). A party is entitled to a jury question, instruction, or definition 
if the pleadings and evidence raise an issue. Tex. R. Civ. P. 278; Union Pac. R.R. 
Co. v. Williams, 85 S.W.3d 162, 166 (Tex. 2002). A trial court’s error in 
refusing an instruction is reversible if it “probably caused the rendition of an 
improper judgment.” Tex. R. App. 
P. 61.1(a); Union Pac. R.R. Co., 85 S.W.3d at 166.
We have long 
held that because new and independent cause is part of the proximate cause 
definition, omission of the instruction and definition is reversible error. 
See Young v. Massey, 101 S.W.2d 809, 810 (Tex. 1937) (stating that “[i]t 
is the settled law of this State that if the evidence in a negligence case 
raises the issue of new and independent cause, it is reversible error not to 
include the term in the definition of proximate cause” and that “if such term is 
necessary to be used in the definition of proximate cause, it is reversible 
error not to define it”); Southland Greyhound Lines, Inc. v. Cotten, 91 
S.W.2d 326, 328 (Tex. 1936) (“It is reversible error, in a cause in which the 
testimony tends to prove the injury resulted from a new independent cause, not 
to submit a definition of ‘proximate cause’ embodying that term, or a similar 
term, together with a definition of same.”); see also Bailey, 250 S.W.2d 
at 384; Tarry Warehouse & Storage Co. v. Duvall, 115 S.W.2d 401, 405 
(Tex. 1938) (“This court has repeatedly held that where the testimony raises the 
issue of ‘new and independent cause,’ the trial court should define such issue, 
and that it is reversible error not to do so.”); Tex. Motor Coaches, Inc. v. 
Palmer, 121 S.W.2d 323, 323–24 (Tex. 1938) (same); Orange & N.W. R.R. 
v. Harris, 89 S.W.2d 973, 975 (Tex. 1936); Dixie Motor Coach Corp. v. 
Galvan, 86 S.W.2d 633, 634 (Tex. 1935); Phoenix Ref. Co. v. Tips, 81 
S.W.2d 60, 61–62 (Tex. 1935).
As we 
explained in Cotten,
The term 
“proximate cause” is a legal term with a fixed and long-established legal 
meaning. The word in the term which necessitates that it be defined so as to 
convert it into language employing words of ordinary meaning is the word 
“proximate.” . . . “The question always is, Was there an unbroken 
connection? . . . Or was there some new and independent cause 
intervening between the wrong and the injury?” “New and independent cause” is 
likewise a term of fixed legal meaning that must be defined. Again it is not the 
word “cause” that necessitates a definition of the term; it is the words “new 
and independent.” In other words, there are two kinds of causes to be considered 
by the jury when there is evidence that negligent acts other than the alleged 
negligent acts of the parties was responsible for the injury. It is necessary 
that they be translated by definition into words of such ordinary meaning, and 
so differentiated, as to enable the jury to properly pass upon the issues.
 
91 S.W.2d at 
328–29 (quoting Tex. & Pac. Ry. Co. v. Bigham, 38 S.W. 162, 164 (Tex. 
1896)).
Over one 
hundred years ago we held that the trial court’s refusal to submit an 
instruction on an “unavoidable accident” was reversible error, even though other 
aspects of the jury charge covered the defensive matter. Galveston, H. & 
S.A. Ry. Co. v. Washington, 63 S.W. 534, 538 (Tex. 1901). We recognized that 
in reviewing omissions from the jury charge, we must view the charge “as 
practical experience teaches that a jury, untrained in the law, would view it.” 
Id. Our reason for requiring such a defensive theory to be submitted 
holds just as true today as then:
It is 
claimed by counsel for [the plaintiff] that the defense presented by this 
special charge was covered by the general charge of the court in which the jury 
were instructed . . . [but] it is not to be supposed that 
the jury considered an issue not developed by the charge of the court. Under 
such circumstances the defendant had the right to call upon the court to submit 
specifically the group of facts and circumstances which raised the issues 
expressed in the special charge. Without this protection, the jury, in rendering 
a general verdict under a charge so general as that given, may have disregarded 
a defense which they might have given effect to, if it had been brought to their 
attention.
 
Id.; 
see also Reinhart v. Young, 906 S.W.2d 471, 476 (Tex. 1995) (Hecht, J., 
concurring). Although we have moved to broad‑form jury submissions, we do not 
use the broad‑form submissions as a vehicle to deny a party the correct charge 
to which the party would otherwise be entitled. See Romero v. KPH Consol., 
Inc., 166 S.W.3d 212, 227 (Tex. 2005).
C. Nature of the Evidence Required
Generally, 
one person is not bound to anticipate negligent conduct on the part of 
another. See Ft. Worth & D.C. Ry. Co. v. Shetter, 59 S.W. 533, 535 
(Tex. 1900). However, a person’s negligence will not be excused where wrongful 
conduct of a third party is a foreseeable result of such negligence. See El 
Chico Corp. v. Poole, 732 S.W.2d 306, 314–15 (Tex. 1987) (holding that a 
tortfeasor’s negligence is not superseded by an intervening force or event when 
the intervening force or event is a foreseeable result of the negligence); 
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 550 (Tex. 1985) (noting 
that subsequent criminal conduct is not a superseding cause of an injury if the 
criminal conduct is a foreseeable result of the tortfeasor’s negligence). Nor 
will negligence of a party be excused if an alleged new cause is not such as to 
break the chain of causation and the original negligence concurs in causing the 
injury. See Gulf, C. & S.F. Ry. Co. v. Ballew, 66 S.W.2d 659, 661 
(Tex. Comm’n App. 1933, holding approved) (holding that “[w]hen the new cause or 
agency concurs with the continuing and co‑operating original negligence in 
working the injury,” the original party’s negligence “remains a proximate cause 
of the injury, and the fact that the new concurring cause or agency may not in 
such case have been reasonably foreseeable should not relieve the wrongdoer of 
liability”).
So, two 
aspects of causation are involved in an intervening event or action rising to 
the level of a new and independent cause. First, the intervening event or action 
must not be ordinarily or reasonably foreseeable. See Phan Son Van v. 
Peña, 990 S.W.2d 751, 754 (Tex. 1999). Second, the original acts and 
omissions must have run their course and been completed so that they did not 
actively contribute in any way to the injuries involved. See Bell v. 
Campbell, 434 S.W.2d 117, 122 (Tex. 1968).
In 
determining whether an intervening force rises to the level of a superseding 
cause, we have found the factors set forth in section 442 of the Restatement of 
Torts instructive. Phan Son Van, 990 S.W.2d at 754–55. Those factors 
are:
(a) the 
fact that the intervening force brings about harm different in kind from that 
which would otherwise have resulted from the actor’s negligence;
 
(b) the 
fact that the intervening force’s operation or the consequences thereof appear 
after the event to be extraordinary rather than normal in view of the 
circumstances existing at the time of the force’s operation;
 
(c) the 
fact that the intervening force is operating independently of any situation 
created by the actor’s negligence, or, on the other hand, is or is not a normal 
result of such a situation;
 
(d) the 
fact that the operation of the intervening force is due to a third person’s act 
or to his failure to act;
 
(e) the 
fact that the intervening force is due to an act of a third person which is 
wrongful toward the other and as such subjects the third person to liability to 
him;
 
(f) the 
degree of culpability of a wrongful act of a third person which sets the 
intervening force in motion.
 
Id. 
(quoting Restatement (Second) of 
Torts § 442 (1965)).
In Phan 
Son Van we were reviewing a summary judgment to determine whether the proof 
of intervening cause was conclusive and warranted summary judgment. Id. 
Here we are faced with a different issue: whether there was legally sufficient 
evidence to raise the issue of intervening cause. See Bailey, 250 S.W.2d 
at 384. The questions of foreseeability and proximate cause generally involve 
practical inquiries based on “common experience applied to human conduct.” 
See City of Gladewater v. Pike, 727 S.W.2d 514, 518 (Tex. 1987) (citation 
omitted). There is legally sufficient evidence of a matter when the proof and 
inferences from the proof furnish a reasonable basis for reasonable minds to 
reach differing conclusions as to the existence of the matter. See Orozco v. 
Sander, 824 S.W.2d 555, 556 (Tex. 1992).
III. Analysis
To determine 
if there is evidence supporting Crown Derrick’s requested new and independent 
cause instruction, we must review the record to see if there is more than a 
scintilla of evidence on which reasonable jurors could base a finding that (1) 
Crown Derrick would not have ordinarily or reasonably foreseen that, even if its 
rope barriers were removed, the walkway would be left without protection to 
prevent personnel from falling into the opening; and (2) Crown Derrick’s 
allegedly negligent actions were not continuing, but were complete and had come 
to rest. See City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); 
Marathon Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003). Although much 
of the evidence and testimony is in conflict, there is some evidence which would 
support findings in Crown Derrick’s favor as to both such matters.
A. Foreseeability
The fact that 
OSHA regulations and industry safety policies existed as to openings on 
construction sites could support an inference that Crown Derrick would not 
reasonably foresee Rowan or its contractors removing barriers from around the 
ladder opening and then leaving the opening unprotected in violation of safety 
regulations and policies. Further, Rowan had its own worksite safety policies in 
place, requiring that all openings be protected in some manner by 
hatches/handrails with gates or some means to prevent personnel from falling 
through openings. When Crown Derrick left the jobsite, the opening had some 
means to prevent personnel from falling through the opening. There is evidence 
that before Dew’s accident on September 23, Crown Derrick was not placed on 
notice that its safety barriers (or their absence) were related to any accidents 
at the ladder opening and that Crown Derrick did not have control of the fourble 
platform after it left the jobsite in August.
Evidence was 
introduced that after Crown Derrick’s rope barriers were taken down, worksite 
and industry safety policies were complied with by persons (1) covering the 
opening with a heavy electrical junction box, and (2) when Rowan removed that 
box, erecting more rope barriers. Such evidence would support an inference that 
Crown Derrick’s anticipating the opening would not be left unprotected in 
violation of safety policies was reasonable. There was evidence that Rowan’s 
experienced construction supervisor was on the fourble platform a week before 
the accident and noted the presence of a rope barrier at the ladder opening. 
Such evidence would support inferences that (1) Rowan’s supervisors were aware 
of the safety rules and inspected the rig to enforce compliance with them, 
including the rule that openings in walkways were not to be left without safety 
protections; and (2) the opening being left unprotected by third parties in 
violation of safety regulations and policies was not reasonably foreseeable to 
Crown Derrick.
B. Concurring Cause
The opening 
in the walkway was a required feature of the rig because it was to be used in 
the North Sea. Evidence showed that Crown Derrick assembled the derrick and 
walkway as it was designed, except as to the safety gate for which no mounting 
hardware was available. In lieu of a safety gate, rope barriers were placed and 
some evidence showed that the barriers complied with safety rules and would have 
prevented personnel from falling into the opening. Subsequent removal of the 
rope barriers and covering of the opening with a junction box was evidence that 
Crown Derrick’s long‑completed actions were not a continuing cause of later 
events such as Dew’s fall. Accordingly, there was evidence which would have 
allowed a jury to infer that absent subsequent independent acts of persons not 
under Crown Derrick’s control, the rope barriers would have prevented Dew from 
falling through the opening. In sum, there was evidence that Crown Derrick’s 
actions as to safety protections for the opening were complete, had come to 
rest, and that absent new and independent actions of third parties, Dew would 
not have fallen.
C. Restatement Factors
Reviewing the 
evidence in light of factors in section 442 also leads to the conclusion that 
the removal of Crown Derrick’s barriers and failure to replace the barriers or 
otherwise protect the ladder opening was a new and independent cause of the 
accident. Restatement (Second) of 
Torts § 442 (1965). The removal of not only Crown Derrick’s barrier but 
also the subsequently placed additional protective devices and failure to 
reinstall some sort of protection appears to be extraordinary in view of the 
industry’s and Rowan’s safety rules, which were applicable to all workers on the 
rig. See id. § 442(b). The removal by third parties of not only rope 
barriers from around the opening, but a heavy metal covering placed on the 
opening at one time, reflect actions operating independently of the situation 
created when Crown Derrick placed barriers around the designed opening, which 
some evidence showed complied with applicable safety guidelines. See id. 
§ 442(c). The failure to protect the opening after removal of Crown Derrick’s 
rope barriers was due to third persons working in a controlled construction 
environment, not Crown Derrick’s employees. See id. § 442(d). The removal 
of Crown Derrick’s rope barriers by third persons and failure of those third 
persons to then place protective devices around the opening was wrongful toward 
Dew and was such as could subject the third persons to liability for Dew’s 
injuries. See id. § 442(e). The removal of Crown Derrick’s protective 
rope barriers and failure to reinstall some protective mechanism could be viewed 
as a culpable wrongful act by a third person in connection with the accident. 
See id. § 442(f).
IV. Application
The plurality 
opinion says that the risk of injury within control of and created by Crown 
Derrick was the risk of injury due to an open hole in the walkway without 
adequate safeguards. But, the risk of having a ladder opening in a walkway was 
not a risk within the control of Crown Derrick. The ladder opening was required 
by safety rules for drilling rigs to be used in the North Sea. Moreover, 
industry standards, as well as OSHA’s and Rowan’s safety rules, recognize a fact 
of life on construction sites: sometimes openings must be left in floors and 
walkways for various reasons due to the nature of the construction process. One 
such reason is the reason for the opening in this case: it was a designed 
feature.
The risk 
within the control of Crown Derrick was the risk presented by inadequate 
safeguarding of the opening. The Court’s judgment denies to Crown Derrick its 
right to have the jury be properly instructed on the question of whether Crown 
Derrick should have foreseen that third parties would violate industry, OSHA, 
and worksite safety rules by leaving the ladder opening unprotected, and whether 
actions of other parties broke the causation chain between any actions by Crown 
Derrick and Dew’s fall.
Foreseeability 
requires more than viewing the facts in retrospect and charging a party to 
anticipate an extraordinary sequence of events whereby the defendant’s conduct 
can be said to bring about the injury. See Doe v. Boys Clubs, 907 S.W.2d 
472, 478 (Tex. 1995). The evaluation of evidence as to foreseeability and 
proximate cause generally involves practical inquiries based on common 
experience applied to human conduct. See City of Gladewater, 727 S.W.2d 
at 518.
As to harm 
from the omission, whether Crown Derrick’s actions had come to rest and the 
actions of Rowan and its other contractors were new and independent causes of 
Dew’s fall was a hotly contested issue throughout the trial. Crown Derrick 
contended in the court of appeals that there was legally insufficient evidence 
of both elements of proximate cause—cause-in-fact and foreseeability—for the 
jury finding to be upheld. Although the court of appeals overruled that 
contention, the evidence on the issue, some of which is referred to above and 
more of which is referenced by the court of appeals’ opinion, reflected the 
magnitude of the contest at trial over the question.
What we said 
long ago bears repeating: In reviewing omissions from the jury charge, “we 
should view the charge as practical experience teaches that a jury, untrained in 
the law, would view it.” Washington, 63 S.W. at 538. The discussions in 
reported cases of whether proximate cause instructions should or should not 
include new and independent cause language bear witness to the subtleties 
involved in what is a sufficient subsequent event or force to break the chain of 
causation between a party’s negligence and an occurrence. To fail to instruct 
the jury on an established legal doctrine raised by the evidence and in serious 
contention at trial should not be held to be harmless error.
V. Conclusion
I would hold 
that a practical view of the evidence in this record yields the conclusion that 
there is legally sufficient evidence of new and independent cause to require the 
instruction to have been given as requested by Crown Derrick. I would also hold 
that the trial court’s failure to give the instruction was not harmless.
 
________________________________________
Phil 
Johnson
Justice
 
 
OPINION DELIVERED: June 
30, 2006